HAIMAN & BROTHER, plaintiffs in error, *vs.* MOSES & GERRARD, defendants in error.

1. When the evidence is in conflict, and no rule of law is violated, and there is sufficient evidence to sustain the verdict, a new trial will not be granted.

2. An attorney-at-law who had a claim against a client for a fee as a retainer, and also for professional services rendered, brought suit, alleging in the declaration that defendant was indebted to him in the sum of $2,500 for "professional services," and on the trial offered evidence to show the value of the services rendered, and also to prove that the retainer was due; no objection was made to the evidence, and the jury found a verdict for a sum which, with or without including the retainer, could be sustained by the evidence: *Held*, that the introduction of evidence as to the retainer did not entitle the defendant to a new trial, as he made no objection to it when introduced, though the record contained no separate allegation as to the retainer.

3. If a party waives his objection to the pleadings by allowing the evidence to go to the jury without objection, he is not entitled to a new trial on the ground that the allegations and the proof do not correspond.

Attorneys' fees. Charge of the Court. Before Judge JOHNSON. Muscogee Superior Court. May Term, 1869.

Moses & Gerrard brought complaint against L. Haiman & Brother upon an open account, one item of which was "For professional services in the matter of Henry Lafour vs. L. Haiman & Brother, $2,500." The other items were for small fees, amounting in the aggregate to $60 00, and about which there was no dispute. As to the first item, the evidence was as follows: During the war between the United States and the Confederate States, defendants, one Rosenburg and others, formed a partnership to buy quartermaster stores for the Confederate States, in Europe. They agreed that this contract should not be sold to any one without the consent of the others. Elias Haiman and Rosenburg went to Europe, and Haiman had to return. In his absence, Rosenburg, without such consent, sold out said contract to Lafour upon certain terms, by which Rosenburg got from Lafour £20,000, to be spent in such purchases. He bought but £3,000 worth, and claimed the other £17,000 upon the pre-

tense that Lafour had failed to comply with his undertakings. When Elias Haiman got back to Europe he was informed of this, and tried to get an interview with Rosenburg, but failed. Hearing that Rosenburg had come to the United States, he desired Lafour to send after him. Lafour agreed to do so if he would give him the bond of Haiman & Brother, guaranteeing Lafour against loss, in the sum of £8,000. This bond was given. Rosenburg was found, and out of him £1,500 was collected. After the war, Lafour's agent came to Georgia, and demanded a settlement from Haiman & Brother. He demanded of them only £3,000. They then sought plaintiffs for legal advice.

The testimony of the defendants is in substance, that they called on R. J. Moses, Jr., told him all the facts, and that he advised them to offer £2,000 in compromise, and told them that he would charge them $150 00 for a fee. Next day they called on R. J. Moses, Sr., found that his son had told him of the case, and that Lafour's agent had been there to employ him, and he told them that they must pay $250 00 for a fee; they professed to be willing to pay what they got from Rosenburg, less expenses, say about £800, because that was Lafour's money, and they laid no claim to it, and said that if Moses, Sr., would get them entirely out of it they would not begrudge $1,000 00 as a fee. He told them that Lafour's agent was not putting his claim on the bond for £8,000, not seeming to know anything about it, and told them to go back and withdraw their offer of £2,000, and offer what they got from Rosenburg, less expenses, but that it would be very difficult then to get a settlement for less than £2,000. They had offered the £2,000, but it was refused, as they thought, because it was not offered in cash. Next day they called again, and R. J. Moses, Sr., wished $250 cash, as a retainer. They asked what he meant by a retainer. He said, to keep his firm from being employed by Lafour's agent. They promised to pay it next week, and asked him what other charges he would make, and he said he did not know, that there might be a law-suit in the United States District Court, etc., and then he would charge additional fees. They were ad-

vised that there could be no recovery on the bond in this country, but that there could be in Europe, where Elias Haiman wished to go. They made no objection to said arrangement as to fees.

R. J. Moses, Jr., testified, that in the first interview he told them that they must pay $250, as a retainer, but they must see his father as to the regular fee.

R. J. Moses, Sr., testified, that they said to him if he could get the settlement upon the basis of their paying the £1,500, less expenses, they would not begrudge $1,000 00, as a fee; that he replied that he would see what he could do, and would then charge them, in addition to the retainer of $250 00, what he thought his services worth. Their offer was withdrawn and Lafour's agent went away.

After much correspondence, the whole matter was settled by Haiman & Brother giving Lafour a title to certain property in Columbus, at the value of $7,000 00, as expressed in the deed. R. J. Moses, Sr., then called for his fee; they said they would pay the $250 00 retainer, but no more; he claimed that his services were worth $2,500 00, and said they were agreed as to the retainer, but he would sue them for the fees. They paid no part of the retainer but $20 00, and this suit was brought.

Besides these facts, the following evidence was produced: James M. Smith, an attorney-at-law, testified, that if plaintiff's said services resulted in releasing defendants from a liability for $60,000 00, they were worth $2,000 00; that if the claim was for only £3,000, and said services reduced it to £750, they were worth from $1,200 00 to $1,500 00; that if defendants did not believe they owed Lafour anything, and merely got this settlement to avoid a law-suit, the fee for the settlement should be from $500 00 to $800 00. B. Hill, an attorney, testified to the same.

Mr. Bowers, who had had this matter in hand against Haiman & Brother, before the agent came here, testified that Lafour's agents would have employed plaintiffs if defendants had not done so; that the agent did claim the whole £17,000, and but for said settlement, would have sued for that amount;

that the settlement could not have been effected except by R. J. Moses, Sr., and that the property taken in settlement had been on the market ever since the settlement, and it could not be sold for $4,000 00.

The Court charged the jury that they should first ascertain from the evidence what the services of plaintiffs were reasonably worth, to which they should add $250 00 for the retainer. The jury found for plaintiffs for $1,310 00, with interest and costs.

A new trial was moved for upon the grounds that said charge was erroneous, and that the verdict was not sustained by the evidence.

PEABODY & BRANNON, WILLIAMS & THORNTON, for plaintiffs in error.

MOSES & GERRARD, for defendants.

BROWN, C. J.

1. We have ruled again and again that this Court will not grant a new trial when the evidence is in conflict, and no rule of law has been violated, and the Judge who tried the case is satisfied with the verdict.

2. The motion for a new trial in this case rests mainly on the ground that the declaration charges that the defendants are indebted to the plaintiffs in the sum of $2,500 00 for "professional services," and that plaintiffs claim $250 00, as a retaining fee, and the value of the services rendered by them in addition to the retainer, and that upon this declaration, evidence was submitted to the jury to sustain the claim for both the retainer and the *quantum meruit*. The Court charged the jury that they should first ascertain from the evidence what the services of plaintiffs were reasonably worth, to which they should add $250 00 for the retainer.

Counsel for plaintiffs in error insists that plaintiffs might have recovered $2,750 00 under this charge, and under certain parts of the evidence; that is, $2,500 00 for the services rendered, and $250 00 for the retainer, when the declaration

only claims $2,500 00 as due.   And the counsel insists, that the declaration should have contained a count for the services rendered, and another for the retainer, and that as this was not the case, a new trial should be granted.   But there are two replies to this : first, that the jury did not find the $2,750 00, nor the half of that sum, and the objection on that ground is imaginary rather than real ; second, the evidence as to the retainer was permitted to go to the jury without objection by the defendants.   Indeed, it may be said without any great inaccuracy in language, that the retaining fee is a fee for professional services, though, it is insisted, that the retainer is not paid for services rendered but in consideration that the counsel will not take a fee from the other side, not on an agreement to do service for the defendant but on an agreement not to do service against him.   Without entering into a discussion of the correctness of this distinction, we are satisfied to put the case on the ground that there was sufficient evidence to support this verdict with or without including the retainer in the amount found by the jury.

If a party permits evidence to go to the jury without objection, and the jury find on the evidence, the party is not entitled to a new trial on the ground that the allegation and the proof do not correspond.   Generally, when a party permits proceedings to be had, in the progress of his case, without making any objection, the Court will hold him to have waived the objection, and will not relieve him against the consequences of the proceeding, to which he did not object at the proper time.   *Dudley's Reps.*, 209 ; *Ga. Decisions, part* 2, 131 ; 2 *Kelly*, 281 ; 9 *Ga.*, 359 ; 22d *Ga.*, 24, 330 ; 27 *Ga.*, 378 ; 36 *Ga.*, 599 ; 37 *Ga.*, 102.

We are satisfied the objection to the evidence came too late in this case after verdict.

Judgment affirmed.