Artope *et al. vs.* Goodall.

---

James B. Artope, trustee, *et al.*, plaintiffs in error, *vs.* William P. Goodall, executor, defendant in error.

1. Where a marriage contract secured the wife's property through a trustee to her separate use, free from the power or control or any liability for the debts of her intended husband, the profits or income accrui- g from said property belongs exclusively to the wife, and does not become, in any event, a part of the *corpus* of the trust fund, in which a remainder is created, unless some provision is made therefor.

2. If other property be purchased with such income, and title thereto is taken to the trustee for the wife, and especially if the husband is cognizant of it, her right to the same may be protected against the marital rights of the husband, although no technical words creating a separate estate in her are contained in the deed.

3. If proof of payment with such income, goes to the jury without objection, it may be considered by them in making their verdict, although there be no allegations in the pleadings setting up such facts. But such proof, or proof of the further fact that the scrivener who drew the deed did not follow instructions in drafting it, is not admissible over objections unless the pleadings authorize it.

4. If a trustee in whom the legal title is vested, brings suit for real property, and the *cestui que trust,* who is a married woman, die *pendente*

Artope *et al. vs.* Goodall.

*lite,* and there is no administration on her estate, the action does not abate, but may be continued for the recovery of the property for her heirs. If the action be for personal property, the trustee may recover so that he may be able to deliver it to the administrator, if one be appointed, or if there be no necessity for administration, then to the distributees, subject in either case to all charges to which it may be liable.

5. Purchasers who do not claim under the husband, cannot set up his marital rights in order to protect their title against the rights of the wife in such property as is specified in the second point of this syllabus, if the husband himself could not so assert them.

6. Where a deed was made to a third party, trustee for a married woman, which does not create a separate estate in the wife, the property *prima facie* becomes the property of the husband, and *bona fide* purchasers who claim under him without notice of any equity of the wife in the property, hold a good title, although they may have never seen such deed.

7. When a witness has been impeached by proof of general bad character, one who is called to sustain him should, if not able to say that his general character is not bad, at least be required to state that it is not such as to render him unworthy of credit on his oath, and that, from this character, the sustaining witness would believe him on his oath.

Trusts. Husband and wife. Marriage contract. Evidence. Vendor and purchaser. Deeds. Witness. Before Judge HERSCHEL V. JOHNSON. Bibb Superior Court. October Term, 1873.

This is the third time this litigation has been before this court : See 42 *Georgia Reports,* 95, and 48 *Ibid.,* 537.

This was ejectment for part of lot number fifteen, in the western range of two acre lots in the city of Macon, by Doe upon the demises of J. B. Artope, as trustee of Mrs. Elizabeth W. McLaughlin, (made party instead of George M. Logan, former trustee, who died *pendente lite,*) and of Georgia, Emma, Alexander and Charles J. McLaughlin, children of said Elizabeth, against Roe, casual ejector, and William P. Goodall, as executor of Robert P. McEvoy, tenant in possession. The defenses were not guilty, title by prescription and an equitable plea.

Plaintiff gave in evidence a marriage settlement made in Richmond county, Georgia, on the 28th December, 1830, be-

tween Alexander R. McLaughlin, of Bibb county, Elizabeth W. Bugg, of Richmond county, and John T. Lamar, of Bibb county, signed by the three, recorded in Richmond county, on March 22d, 1831, and in Bibb county on the 2d February, 1870.

This marriage settlement is set out in full in 42 *Georgia,* page 97. John T. Lamar died in 1842. On petition of Mrs. McLaughlin and her children, George M. Logan was, on the 16th of April, 1869, by the chancellor of Bibb county, duly appointed trustee to succeed said John T. Lamar, with his powers, rights and duties, as set forth in said papers, and Logan accepted the trust. Logan died pending this suit, and Artope was appointed in his stead.

Plaintiffs next read in evidence a lease made the 11th of July, 1836, by the mayor and council of Macon to John T. Lamar, as trustee for Mrs. McLaughlin, embracing the premises in dispute, recorded February 1st, 1870, (a copy of which is set out in 42 *Georgia,* page 99.)

Several witnesses were introduced by both plaintiff and defendant, in connection with other testimony, but the following facts are sufficient for a clear understanding of the points decided. The marriage settlement secured to Mrs. McLaughlin, through a trustee, her property to her separate use, free from the power or control or liability for the debts of her husband. The evidence showed that the property in dispute had been purchased with the hire of the negroes embraced in the said mariage settlement, and with other trust funds.

The lease from the city of Macon to John T. Lamar, trustee for Mrs. McLaughlin, contained no words of separate use. This instrument had been lost for twenty years, and only found a short time before the bringing of this suit.

Mrs. McLaughlin died before the trial of this case, and there was no administrator upon her estate. The defendant introduced a deed to the premises from A. R. McLaughlin, (husband of Mrs. McLaughlin,) to White & McLaughlin, co-partners, consideration, one dollar, dated May 23d, 1843, and duly recorded. A deed from the sheriff of Bibb to Thomas

A. Brown, dated March 6th, 1849, the lot being sold · as White's property. A deed from Thomas A. Brown to Joseph A. White, dated January 10th, 1851, being a quit claim. A deed from Joseph A. White to Edward L. Strohecker to one-half interest in lot number fifteen, dated July 1st, 1852. A deed from R. F. Baldwin, as executor of Joseph A. White, to Thomas Stubbs, to one-half undivided interest in lot number fifteen, dated March 15th, 1855. A deed from Thomas Stubbs to J. A. Ralston covering one undivided half of lot number fifteen, dated June 6th, 1859. A deed from J. A. Ralston to Edward L. Strohecker to west half of lot number fifteen, dated October 23d, 1860. A deed from Edward L. Strohecker to William P. Goodall as executor of McEvoy, dated 24th September, 1872.

There were several witnesses. introduced for the purpose of impeaching Alexander R. McLaughlin, introduced by the plaintiff. Strohecker, Goodall and others, testified that at the time they purchased they had no knowledge or notice of Mrs. McLaughlin's equity, or that the property in dispute was her·trust property, or that her money paid for it.

The jury found for the defendant. Plaintiff's counsel moved for a new trial upon the following grounds, among others:

1st. Because the court erred in refusing to allow A. R. McLaughlin to testify what instructions were given to the city officials as to the person to whom the lease was to be made, and that there was a mistake in leaving out a part of those instructions.

2d. Because the court erred in refusing to allow James M. Jones (a witness introduced to sustain A. R. McLaughlin,) to be asked if he would believe the said McLaughlin upon his oath—Jones having stated that McLaughlin's general character had been exemplary in some things, and in others not, but that he did not know the general opinion of the people about him.

3d. Because the court erred in charging as follows: "That the deed from McLaughlin to White & McLaughlin was recorded, and so was the deed from White to Strohecker.

This was constructive notice to Strohecker that title was in White. It is true that a purchaser is bound to look to his title, and he buys at his peril as against the true owner, and he is not a *bona fide* purchaser, if by ordinary diligence he could have ascertained the true owner. But if the true owner has his deed concealed or lost by his own act, so that the purchaser could not by such diligence ascertain who the true owner was, and the true owner stands by knowing of his purchase, and permits him to go on and make improvements, he cannot set up the want of *bona fides* against such purchaser. Therefore, if you believe from the evidence that Mr. and Mrs. McLaughlin concealed the lease deed for a long series of years, embracing the period in which these various purchases were made, so that it was impossible for them to have seen it, and McLaughlin, with the knowledge· and acquiescence of Mrs. McLaughlin, claimed the land and treated it as his own, then it does not lie in the mouth of these plaintiffs to set up the want of *bona fides* on the part of purchasers claiming title under McLaughlin."

4th. Because the court erred in charging as follows: "If the property in dispute was purchased with the hire of the negroes mentioned in the marriage settlement, that under the terms of that settlement, the hire of the negroes became the individual property of Mrs. McLaughlin, and when the hire was so invested in the land in dispute, then the land became the individual property of Mrs. McLaughlin—not covered by the trust—and at her death belonged to her separate estate, and can only be recovered by her administrator, and there being no demise in the name of her administrator, the plaintiff cannot recover in this suit."

The motion was overruled, and plaintiffs excepted. ·

J. & J. C. Rutherford, for plaintiffs in error.

Whittle & Gustin; Lanier & Anderson, for defendant.

TRIPPE, Judge.

1. It was claimed in the argument before this court that the profits or increase of the trust estate became a part of the *corpus* of that estate, and by the terms of the deed would go to the remaindermen.   It was not so provided in the deed, which was the marriage contract.   By that, a separate estate was created in the wife, free from the control of the husband, and at her death the property, not the income, was to go to the children if the wife died intestate.   Unless a provision was made therefor we know of no authority that would authorize the construction of such terms to be that the remainder interest included the income or profits.   That belonged exclusively to the wife.

2. Previous to the adoption of the Code the mere creation of a trust, without anything to show that a separate estate was intended for the wife, did not exclude the marital rights of the husband.   But if such trust property be purchased with the income of the other property in which the wife has a separate estate, as in the case of the deed " to Lamar, trustee for Mrs. McLaughlin," she could claim its protection against the marital rights of her husband, and purchasers from him, with notice.   It was stated in *Logan vs. Goodall, 42 Georgia, 95*, which was this case in the name of another plaintiff, that by the terms of the marriage contract the intended husband bargained and agreed that any property she might thereafter become entitled to in any manner whatever, should be free from his marital rights, and that he was thereby estopped from setting them up.

3. It has often been held by this court, that if proof goes to the jury without objection, which would show a right in the party offering it, the jury may consider it, although there are no allegations in the pleadings setting up the facts thus proved. This is put upon the ground that if objection be made that the pleadings do not authorize the testimony, the party tendering it might amend so as to make it admissible.   See 39 *Georgia*, 708; 49 *Ibid.*, 268.

4. The principle asserted in the fourth point of the syllabus we consider was virtually decided in this case when it was here before: 48 *Georgia*, 537.   As was asked in that decision, what injury can result to anybody by letting this case, which has undergone a protracted and costly litigation, be continued for the benefit of those who may now be entitled to the property?   We do not say they are; but why not let them adopt the case and have their rights determined?   If any *mesne* profits should be the separate estate of Mrs. McLaughlin, or if any special direction be necessary to be given to any particular portion of it, under the broad powers given to a court of law, the verdict can be moulded to meet the exigency.

5. As to one-half of the lot of land in controversy no one claims the title thereto under the husband.   It can, therefore, be of no interest to any claimant as to what his marital rights may have been, so far as that half is concerned.

6. The deed to Lamar, trustee, etc., *prima facie* put the title in McLaughlin, the husband.   Purchasers from him had the right to treat him as the true owner, if they had no notice of the equitable rights of the wife.   And this is true, whether or not such purchasers had ever seen such deed.   Because a purchaser was ignorant of a fact or a deed which makes his title good, he cannot be denied the right to set up such a fact, or such a deed in support of his title.   One who bought of McLaughlin, or of a purchaser under him, is to be assumed as believing he had the title, if nothing appears to the contrary.   If on subsequent examination such purchaser discovers there was a deed which on its face did vest the title in his vendor, and which would protect his own title, it would be absurd to hold that it should be of no avail, simply because he did not examine before he bought and see that he did, in fact, get a good title.

7. Upon the question as to how far a witness called to sustain another who has been impeached by proof of general bad character, should be required to go in stating his knowledge of the general character of the impeached witness, before he can answer the final question put in such cases, it is almost

impossible to prescribe by a specific rule, what exact terms the sustaining witness should use.   To impeach a witness by proof of general bad character, the impeaching witness should be first asked as to his knowledge of the general character of the witness, and next as to what that character is, and lastly, he may be asked if, from that character, he would believe him on his oath : Code, section 3873.   "The witness may be sustained by similar proof of character:" Section 3874.   We think that under these sections, if the sustaining witness is not able to say that the general character of the impeached witness is not bad, he should, at least, be required to state that it is not such as to render him unworthy of credit on his oath, before he can give his own declaration, that from this character he would believe the other on his oath.   This would meet all the difficulty presented in this case, and probably any that would arise in any other.

Judgment reversed.