FREEMAN *v.* THE STATE.

No. 13143. MAY 23, 1940.

*Durwood T. Pye* and *George G. Finch*, for plaintiff in error.

*Ellis G. Arnall, attorney-general, H. G. Vandiviere, solicitor-general*, and *Emil J. Clower, assistant attorney-general*, contra.

BELL, Justice. J. S. Freeman, a physician, was tried on an indictment charging that on June 13, 1939, he did kill and murder A. R. Saunders "by throwing gasoline over and upon him, the said A. R. Saunders, and, after so doing, set fire to the clothing, body, limbs, and members of him the said A. R. Saunders, and said gasoline and fire when used in the manner aforesaid being weapons and instrumentalities likely to produce death, and by so doing thereby inflict upon the said A. R. Saunders certain wounds, a certain mortal wound, and certain mortal wounds from which he . . then and there died." The trial resulted in a verdict of guilty, with recommendation to mercy. The defendant's motion for new trial was overruled, and he excepted.

336

■ In the first special ground of the motion the movant complained of the admission, over objection, of the following testimony of Dr. W. M. Gober, a physician, introduced as a witness in behalf of the State: Q. "Doctor, if a person was to drink anywhere from a quart to a half a gallon of sweet milk one to two hours prior to the administering of any drug, narcotic, opiate, strychnine, medicine, or any drug or opiate, state whether or not the taking of that sweet milk into the stomach, would that act as a tendency to prevent traces of the administering of any opiate or dope or narcotic from being found by a chemical analysis after the death of the individual?" A. "Yes, sir." The objections were: "To which I object, it being a hypothetical question based on facts that have not been proven on the trial of this case. There is no evidence here that there has been any dopes, opiates, or any other thing administered to the deceased by anybody, and the hypothetical question propounded to this witness here has never been proven by a single witness on the stand. It isn't based on facts and evidence produced on the hearing of this case." Mr. Pigue: "We would like to supplement that with this statement, this further objection, that the indictment charges the defendant on trial with having killed the person named therein by throwing gasoline upon him and setting it afire; and there is no accusation in the indictment with reference to any poison whatever."

The court did not err in overruling these objections and admitting the testimony. For some time before the occurrence in question the defendant had occasionally taken meals at the home of A. G. Smith, who resided in the same neighborhood with him. He had an old automobile which had been standing unused in Smith's yard for several months—about nine months according to one witness. On the date alleged in the indictment the defendant and Saunders came to this home for the apparent purpose of working upon the automobile. At this time all the Smiths were away from home, except a girl about thirteen years of age and two smaller children. The defendant several times told the little girl to stay with the other children in the back yard, as Saunders was worried and did not want to be bothered with them. She testified that Saunders looked "drowsy." Later, but how much later the evidence did not show, the girl heard some one moaning, and "went around there, and it was Mr. Saunders burning." She "went run-

ning into the back yard screaming." The defendant then came to the edge of the yard, and told her "to go and get somebody to help." The automobile was of the truck type, and had a cab. From the girl's testimony it seems that the man was just sitting in the cab "burning," and "moaning." In a short while other persons arrived upon the scene. There was testimony by several witnesses from which the jury were authorized to infer that the clothing of the deceased was saturated with gasoline from his hips up, and then set on fire, with the result that he was burned to death. The evidence tended to show that he made no effort to leave the seat of the automobile or to escape from his dreadful situation. One witness testified that he "was sitting up on the seat near the steering-wheel, working his hands this way [indicating]. . . He didn't make any movements further than just the motions of his hands. He seemed to be paralyzed, or inactive." In view of this and other evidence, it was a legitimate deduction that he was under the influence of some kind of opiate which prevented conscious action by him. A few hours earlier, at breakfast time, he had drunk more than a quart of sweet milk, and it further appeared from the evidence that an autopsy failed to disclose any sign of a drug or opiate. Under the evidence as a whole, direct and circumstantial, it can not be said that the hypothetical question was not based on any "facts and evidence produced." Compare *Atlantic & Birmingham Railway Co.* v. *Johnson,* 127 *Ga.* 392 (4) (56 S. E. 482, 11 L. R. A. (N. S.) 1119). "In propounding a hypothetical question . . all of the facts may be grouped together; but it is not essential to the admissibility of evidence that there should be a complete resumé of every fact entering into and involved in the case. The omission to state any necessary fact may be shown on cross-examination as a reason for discrediting the answer or affecting its probative value, and a more complete grouping of the facts involved might have been framed in propounding another hypothetical question embracing such additional facts. It is not always possible to group all of the facts in framing a single hypothetical question." *Davis* v. *State,* 153 *Ga.* 669 (8), 675 (113 S. E. 11). It is immaterial that the indictment did not charge death by poisoning. There is no merit in this ground of the motion for new trial.

■ The court charged the jury as follows: "Now the defendant denies that he is guilty of the offense charged. He denies that he

committed the acts charged in the bill of indictment and as charged therein. He denies that he poured any gasoline or threw any gasoline upon the person alleged to have been killed, or that he set any fire thereto. He contends that the death of the deceased came about through some means unknown to the defendant; that the deceased was sitting in the automobile there as the defendant started into the house for the purpose of getting some water; that the deceased called to him; that when he looked around the deceased was in flames, and that he sought to extinguish them; that he had nothing to do with the starting of those flames, and no connection with it. And if you should find his contentions to be the truth of the case, then he would not be guilty under the law, and it would be your duty to acquit him." In the second special ground this charge was assigned as error for the reason, as contended, that it placed upon the defendant the burden of establishing the contentions stated, whereas under the law the burden was upon the State to prove the defendant's guilt beyond a reasonable doubt. This charge did not purport to instruct the jury in any manner upon the burden of proof, and was not erroneous for the reason assigned. *King* v. *State*, 166 *Ga.* 10 (11), 14 (142 S. E. 160).

■ In special ground 3 it is complained that the court erred in failing to charge the jury that "A person shall not be found guilty of any crime or misdemeanor committed by misfortune or accident, and where it satisfactorily appears there was no evil design, or intention, or culpable neglect" (Code, § 26-404). The court did not err in failing to charge this principle. The defendant contended that he was in no way connected with the death of the deceased, either by accident or otherwise; and there was no evidence to show that if the deceased came to his death as the result of any act of the defendant, such act was committed by misfortune or accident. In the circumstances the principle was inapplicable. *Robinson* v. *State*, 135 *Ga.* 217 (69 S. E. 113); *Simmons* v. *State*, 181 *Ga.* 761 (7) (184 S. E. 291); *Nelson* v. *State*, 187 *Ga.* 576 (5) (1 S. E. 2d, 641).

■ In the brief of counsel for the plaintiff in error no reference whatever is made to the fourth and last special ground of the motion for new trial. Accordingly, this ground must be treated as abandoned. It is insisted, under the general grounds, that the verdict is contrary to the evidence and without evidence to support it,

that there was no proof of the corpus delicti, and no evidence to connect the accused with the death of Saunders. We can not agree to these contentions. The evidence is voluminous, and contains many circumstances indicating guilt. The evidence authorized the inference that the automobile was almost hopelessly out of repair, and that any apparent effort on the part of the defendant either to test or repair it on this occasion was only a pretense connected with a design on the life of Saunders. Some of the tires were flat, one wheel was entirely off, and it had no battery. No tools were there, except perhaps a pair of pliers. On the same morning the defendant asked about an old battery that one of the Smith children had found and brought into the house. It was later found in the automobile, and it appeared that the defendant had sent Saunders into the house to get it. The evidence showed the battery was absolutely dead, and authorized the inference that Saunders knew of this fact. Notwithstanding all this, the defendant had brought to the place a can of gasoline, as if the car might be made to run. More than one person testified that when they came upon the scene, the defendant was apparently making no effort whatever to save the deceased, and appeared indifferent to the consequences. He first stated he did not know the man. There was evidence to the effect that on June 12 he had obtained an accident-insurance policy on the life of the deceased for one day, and that day was June 13, 1939, the day of his death. It is true that this policy was payable only to the estate of the deceased; but there was further evidence to the effect that the defendant had been instrumental in causing the execution of a will by the deceased, in which the defendant was named as executor, and that he had in some way obtained from the deceased a note for $2000 payable to A. G. Smith, which note he retained in his possession. Smith testified that the note was not executed to him for any purpose, and that he saw it for the first time at the coroner's inquest. It is not clear what use the defendant might have intended to make of this note, but the jury were authorized to find that it was a part of some criminal scheme, the objects of which were the death of the deceased and profit to the defendant. Still other criminating circumstances were shown by the evidence. The defendant introduced no evidence, but made a lengthy statement replying to most of the State's evidence. Among other things, he undertook to explain his associations with Saun-

ders, and then stated in effect that Saunders needed an automobile or truck, and that they were endeavoring to see if this one might do. He stated that as he poured gasoline into the tank it "splashed," that Saunders was then under the car, and said "Hold up, Dock, quit that; it is leaking." He thus endeavored to account for the gasoline on the clothing of the deceased, but did not undertake to show how it became ignited, further than to show by some of the State's witnesses on cross-examination that Saunders smoked a great deal. The evidence supported the verdict, and the court did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur.*