37380. WESTERN FIRE INSURANCE COMPANY *v.*
PEEPLES.

DECIDED OCTOBER 17, 1958.

*Gowen, Conyers, Fendig & Dickey, Chris B. Conyers,* for plaintiff in error.

*W. A. Wraggs,* contra.

TOWNSEND, Judge. ■ The main issue in this case, as raised by the only special demurrer insisted upon and also by the general grounds of the motion for new trial and the motion for a judgment notwithstanding the verdict is whether the plaintiff is barred from prosecuting his action because it was not commenced within 12 months of the loss. It is undisputed that the house burned down on May 24, 1955; this action was not filed until August 29, 1957. The policy contains a provision as follows: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss." The appraisal provision in the contract is to the effect that in case of failure to agree "on the written demand of either, each shall select a competent and disinterested appraiser," those two selecting a third, and the three appraise the loss, the result to be binding upon the parties. The petition alleged and the plaintiff's testimony, corroborated to some extent by that of his wife, affirmed that George Stacey as salesman wrote the policy and received the first notice of the loss; that Mr. Carson, an insurance adjuster representing the defendant, came out soon afterward; that he made a settlement offer of $1500 which was refused; that he then "said the only way was to appoint appraisers. You will appoint one and I will appoint one and then they

appoint one." The plaintiff agreed with Carson that this would be done, and he thereafter appointed his appraiser, who testified on the trial as to the value of the burned premises. Nothing further was heard from the insurance company and the plaintiff then wrote the insurance company that "if they didn't pay it in 10 days I would get a lawyer." He then testified that a man from Atlanta representing the defendant company called; that he had on him credentials and a copy of the letter which the defendant had written the insurance company; that this man, whose name he did not know, said it would be "fixed up in a few days" and that "whatever arrangements me and Mr. Carson made would be okay." Later the defendant again called Carson's office in Brunswick, was told not to worry, that it would "get straight", and eventually, when nothing further was done, he turned the claim over to his attorney. While the petition alleges that the Atlanta representative of the insurance company was a vice-president, the evidence demands a finding that this was not so. Other testimony of the plaintiff was controverted, making an issue of fact both as to the amount of the loss and the question of whether the parties had entered into an agreement of appraisal.

In *Peeples* v. *Western Fire Ins. Co.*, 96 *Ga. App.* 39 (2) (99 S. E. 2d 349) it was held: "An agreement to have an appraisal made by arbiters will toll the period of limitation stated in the policy, and the period of limitation will not run while such agreement is pending." This agreement there was alleged to be an oral agreement. The policy provision is that when a written demand is had there *shall* be proceedings for appraisal. Thus, before acceptance, the offer to arbitrate in order to be binding must be in writing, but where an oral offer is made *and accepted*, both parties having agreed to abide the contract provision, it becomes just as effective as though the original offer had been written, since the contract does not provide that the assent be in writing. But the plaintiff in error contends that Carson, being an adjuster, had no authority to suggest or agree that an appraisal be made, under the authority of *Underwriters' Agency* v. *Sutherlin*, 55 *Ga.* 267 (2) as follows: "It is not in the power of local agents or of adjusting agents of the company without

express authority from the managing officers to waive such stipulation [the 12-month period for filing suit] after the loss 'or damage occurs. Their functions relate to taking risks, delivering policies, adjusting and paying losses and damages, not to enlarging the time for suit beyond the term fixed by contract." The question there was an agreement by an adjuster that the claim would be considered, after the expiration of the 12-month period, if additional proofs were offered. Thus, the agreement there was to abrogate one of the terms of the contract, while the agreement here was to invoke them. In *Gibraltar Fire &c. Ins. Co.* v. *Lanier*, 64 *Ga. App.* 269 (13 S. E. 2d 27), citing *Corporation of Royal Exchange Assur.* v. *Franklin*, 158 *Ga.* 644 (124 S. E. 172, 38 A. L. R. 626), it was held that clauses in insurance policies which prohibit waivers unless endorsed thereon refer only to the provisions which enter into the contract of insurance, and do not affect conditions to be performed after loss, such as furnishing proofs of loss and giving of notice, and that an adjuster sent to adjust a loss has the apparent authority to waive proof of loss. The office of the insurance adjuster is to settle the loss; the policy expressly provides that the loss may be, and under certain conditions must be, settled by arbitration; this is a condition to be performed after loss just as much as the furnishing of proof of loss. Accordingly, the insurance adjuster chosen by the company to negotiate and settle the loss must be presumed to have the authority to agree to do so by means of arbitration, and this is a far cry from an agreement on the part of the adjuster to waive the limitation for filing suit by the insured although it happens that the result is the same in both cases. But the policy gives the adjuster no right to bind the company not to enforce its contract provisions; it does, on the other hand, provide a right to settle the dispute by the action of duly appointed appraisers, and the company sends the adjuster for the purpose of effectuating a settlement. When such an agreement is entered into, the law, not the adjuster or the parties, tolls the contractual limitation on the time of filing the action. This the insurance company presumably knew when it placed the appraisal clause in its policy in the first instance. There is accordingly evidence from which the jury was author-

ized to find that an appraisal agreement was entered into. If entered into, there is no direct evidence that it was thereafter abandoned. This might have been inferred by the jury on the ground either of (a) lapse of time, (b) the fact that the plaintiff made no mention of appraisal in the only letter he wrote the defendant, or (c) that the defendant, by filing his first action in the City Court of Brunswick in November, 1956, at that time definitely abrogated any agreement to this effect. Assuming that the agreement was abrogated in November, 1956, this would not be decisive because the agreement, if entered into at all, was within two or three weeks of the loss; during its pendency the contractual limitation was tolled: thereafter, the present suit was filed within 10 months of the filing of the first action, and the untolled period in its entirety would have amounted to less than a year. But it is contended that such action on the part of the plaintiff conclusively showed no such agreement ever existed. The plaintiff's evidence was that it did exist, and this constituted a jury question. It was also a jury question whether the agreement, if existing, was abandoned some time prior to the filing of the first suit and that the plaintiff's conduct and the lapse of time would be proof of abrogation. " 'Parties may by mutual consent abandon a contract so as to make it not thereafter binding. . . A contract may be rescinded by agreement, although the evidence thereof may be by conduct and not by words.' *Shoup* v. *Elliott*, 192 *Ga.* 858, 861 (16 S. E. 2d 857)." *Hennessy* v. *Woodruff*, 210 *Ga.* 742 (2) (82 S. E. 2d 859). Whether or not the agreement was still pending was under the evidence here a question for the jury, which decided this issue in favor of the plaintiff. There was accordingly evidence to authorize the verdict in his favor as against the sole defense presented, which is that the action is barred because not commenced within 12 months of the loss. The trial court did not err in overruling the special demurrer, motion for judgment notwithstanding verdict, or the general grounds of the motion for new trial.

Special ground 8 complains because the trial court charged on the subject of fraud.

The petition in this case alleged that the defendant fraudu-

lently led the plaintiff into false security about his claim by wilfully keeping the plaintiff in suspense through the misrepresentations and misleading statements of its agents, as set out above, and that the plaintiff relied on the defendant's good faith and promises; that these promises were not made in good faith and that the adjuster, Carson, later told the plaintiff's lawyer, "that he disliked old man Peeples, was glad that he did not collect on the policy, and that if he could help it, he never would collect." This was supported by evidence to the same effect. Further, Carson denied entering into any agreement to arbitrate, and the testimony of the president and four vice-presidents of the defendant company that none of them had any dealing with the plaintiff was for the purpose of contradicting his testimony as to the agent who he testified approved any arrangements made between him and Carson. If the jury believed that there was in fact an agreement to arbitrate, and that Carson was deliberately trying to defeat the claim, then it was also authorized to believe from all the evidence, including Carson's denials and later statements, that these acts were in bad faith. The charge, which was to the effect that, although fraud will never be presumed, slight circumstances may be sufficient to establish it, was a correct statement of the law and was not an expression of opinion by the court that the action of the defendant's agent did in fact amount to fraud. *Scott* v. *Gillis*, 202 *Ga.* 220 (10) (43 S. E. 2d 95). "Where there is some evidence to show the existence of a certain state of facts, it is not error for the court to charge in reference thereto simply because the great preponderance of evidence tends to show that the supposed state of facts did not in truth exist." *Lyles* v. *State*, 130 *Ga.* 294 (8) (60 S. E. 578). Recognizing that a charge on fraud is error where fraud is not in fact an issue in the case (*Newman* v. *Thompson*, 134 *Ga.* 137 (5), 67 S. E. 662), and that mere representations of an agent of the insurance company promising a future settlement cannot be made the basis of fraud (*Gibraltar Fire &c. Ins. Co.* v. *Lanier*, 64 *Ga. App.* 269, supra), nevertheless, even though slight and consisting in the main of inferences drawn from the testimony as to the motives and credibility of the witnesses, there was a sufficient basis, both in the pleadings

and the evidence, to support the charge given. This assignment of error is without merit.

■ Special grounds of a motion for new trial which are not complete and understandable within themselves without reference to the pleadings or record, or which make no such reference in the ground itself by pointing out the pages in the record where the matter necessary to an understanding of such special ground is located, are too vague and indefinite to require any consideration by this court. *Hartsfield.* v. *Hartsfield,* 87 *Ga. App.* 707 (2) (75 S. E. 2d 276) ; *Brewer* v. *Henson,* 96 *Ga. App.* 501 (4) (100 S. E. 2d 661). Accordingly, the special grounds numbered 4 through 7 cannot be considered.

The trial court did not err in overruling the demurrers to the petition, the motion for a judgment notwithstanding the verdict, or the motion for new trial as amended.

*Judgment affirmed. Gardner, P. J., and Carlisle, J., concur.*