37715. MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION OF OMAHA *v.* HICKMAN.

Decided September 9, 1959—Rehearing denied October 8, 1959.

350

Hull, Willingham, Towill & Norman, W. Hale Barrett, Lewis & Lewis, Preston B. Lewis, for plaintiff in error.

H. Cliff Hatcher, contra.

QUILLIAN, Judge. ■ The only general grounds of the motion for new trial insisted on in this court and the motion for judgment notwithstanding the verdict raise the single question as to whether the verdict was supported by some evidence.

The motion for new trial assigns as the reason for the insufficiency of the evidence to support the verdict, that the evidence failed to show that the insured came by his death through purely accidental cause "independently and exclusively" of all other causes. The ground points out the provision of the policy that confines its coverage to death caused solely in that manner.

The defendant's argument in support of the motion for judgment notwithstanding the verdict raised the question as to whether a verdict in the plaintiff's favor was authorized because the plaintiff refused, after her husband, who was the insured, had been buried for six months and about five months after notice of his death had been given the insurer, to allow his body to be exhumed that an autopsy might be performed. The defendant points to the stipulation of the policy sued upon that

"The association shall have the right and opportunity to examine the person of the insured when and so often as it may reasonably require during the pendency of claim hereunder, and also the right and opportunity to make an autopsy in case of death where it is not forbidden by law."

If the defendant is right as to either of these contentions the verdict was not supported by evidence and should be set aside, and, if as the defendant insists, the evidence demanded a finding that the plaintiff failed, without valid cause, to comply with the terms of the policy in reference to the autopsy, the motion for judgment notwithstanding the verdict should have been granted.

If on the other hand the evidence made an issue that could be legally submitted to the jury as to the plaintiff's right to refuse the defendant's request to perform an autopsy on the insured, and, if there was any evidence that the insured came to his death through purely accidental means independently and exclusively of all other causes, the trial judge did not err in denying the motion for new trial or in denying the motion for judgment notwithstanding the verdict.

It is vigorously insisted that the plaintiff is not entitled to recover because she did not comply with the policy of insurance on which her cause is predicated. It is an elementary principle of law that one who stands on a contract must abide by its terms. As a matter of course the principle is applicable to insurance contracts as well as to all other contracts. Thus the question before this court is whether the refusal of the plaintiff to have her husband exhumed and permit an autopsy, as a matter of law, constituted a violation of the policy provision to which reference has been made, or whether that issue was one of fact for solution by the jury.

Pretermitting discussion as to whether the policy provision relative to the autopsy had been waived, we further consider the question as to whether in the absence of waiver the refusal on the plaintiff's part to permit the autopsy was an absolute bar to her right of recovery.

Where, as here, circumstances and their consequences must be considered in passing on the question as to whether the plain-

tiff's refusal to allow the disinterment and autopsy was in violation of the terms of the policy, and reasonable men might reach a different conclusion from the consideration of the same facts, the question is one for the jury.

This view is supported by ample authority, and particularly by the majority opinion of Order of United Commercial Travelers of America v. Moore, 134 F. 2d 558 (4) (5). The case considered the same question as here presented in the light of the law of this State. In the opinion it is held: "(4) Whether insurer's request to perform autopsy permitted by accident certificate is made within a reasonable time is for the court to decide if it is made either so promptly or so tardily after death that reasonable minds could not fairly differ on the question, otherwise it is for the jury to decide.

"(5) Where accident certificate conferred on insurer right to perform an autopsy under penalty of forfeiture of all rights thereunder, but 65 days elapsed between date notice of death was received by insurer and date autopsy was requested and 56 days intervened between time insurer inquired into facts surrounding insured's death and date that leave to conduct autopsy was demanded and there was no evidence to explain the delay, evidence sustained jury's determination that request was not made within a 'reasonable time.'"

The demand for the autopsy was, according to the undisputed testimony of the plaintiff made about six months after the insured's death, which the record shows was about 47 days after the defendant had written a letter to the plaintiff denying liability of her claim for the insured's death, and more than a' month after the suit was filed.

The defendant's denial of the liability at the time the plaintiff's claim of loss was presented to it was a waiver of the right to demand an autopsy. *Gulf Life Ins. Co.* v. *Matthews*, 66 *Ga. App.* 162, 166 (17 S. E. 2d 247); *Central Manufacturers Mut. Ins. Co.* v. *Graham*, 24 *Ga. App.* 199 (3) (99 S. E. 434); *Gilley* v. *Glens Falls Ins. Co.*, 81 *Ga. App.* 71, 72 (2) (58 S. E. 2d 218).

The evidence showed the insured was apparently well when he left home on the afternoon of his demise; thereafter, out on his farm, the left wheel of his truck fell into a stump hole about

two and one-half or three feet deep, so that the left front part of the vehicle's chassis was resting on the ground; within about 15 minutes the insured died; the mortician testified that he found a quantity of blood in the insured's abdominal cavity. A physician testified: "All that I can say is that certainly would indicate some rupture of the vessel. If he found free blood within the peritoneal-abdominal cavity, that would certainly mean a ruptured vessel of some kind or would have to be a ruptured liver or some other place to give blood into the abdominal cavity. It comes again to the question of the amount of force. One person's head may be struck against something and he not have any bad effects and another person's head may be struck against it with apparently the same amount of force and he may suffer severe concussion. I think these things you mention are possible but I still think when you are dealing with this, you would have to deal with the amount of force. I don't think you could say that a lick on the abdomen would mean anything because if you hit your abdomen with your hand, that is still a lick, but when you start to talking about a non-penetrating wound upon the abdomen, I think it is purely hypothetical as to the amount of force will produce a given injury. Now, a penetrating wound is a different thing because you know what it penetrates. A sudden blow when his stomach hit the steering wheel, when the car fell into the stump hole, I don't think would likely cause death, but probably it could produce death if the blow was of such a force as to rupture a vessel and cause internal bleeding."

Another doctor testified: "If there is free blood in the stomach outside of the blood vessels, I would say that that showed that there was an injury to a blood vessel or to his stomach. If free blood was found in his stomach by the undertaker in drawing blood from the man or cleaning out his stomach, I would say there was an injury to his stomach that contributed to his death."

It is the province of the jury to examine, weigh, and consider each witness's testimony and from a consideration of the evidence as a whole, together with such reasonable inferences as may be drawn therefrom, to make a verdict in conformity with

what it regards to be the preponderance of the evidence. It is elementary that the jury may believe a part, and not accept another part of the same witness's testimony, whether he be an expert or nonexpert witness.

In the case sub judice the jury was not bound by the opinions expressed by the doctors, that the accident did no more than contribute to the insured's death. This is true because the doctors frankly admitted that they did not know what caused the insured's death.

We have reached the conclusion that the verdict was supported by some evidence, and that for neither reason assigned in the general ground of the motion for new trial insisted on here nor the motion for judgment notwithstanding the verdict was a judgment demanded in the defendant's favor.

■ The fourth ground of the motion for new trial relates that a hypothetical question was propounded to Dr. J. M. Byne, Jr., a plaintiff's witness. The question was: "Doctor, I want to ask you some hypothetical questions in regard to this case. If the left front wheel of a pickup truck fell in a deep hole while being driven by a man with a big stomach, a big man, threw his stomach into and against the steering wheel with a sudden and violent force and the man got out of the truck and walked to a home a short distance from the truck, sat down on a stump root of a tree and about 15 minutes later got up, then plunked down and died immediately—could it be that the falling into the hole, the left front wheel of the truck, and hitting of the man's stomach violently and with force against the steering wheel, could it have been the immediate and proximate cause of his death?" The doctor made a rather involved answer to the question and stated that he could not answer the question intelligently without knowing the speed of the insured's truck when its wheel went into the stump hole.

Plaintiff's counsel added to the question the sentence: "Suppose the man was driving 15 or 20 miles an hour, what could be the outcome of that?" The doctor then testified: "What it could be, yes, because a man could go into a hole with no apparent damage to himself at all and yet we do know that very trivial amounts of injury could produce a fatal outcome and if

this man, if the force was such force that it ruptured a vessel inside of his abdomen or inside his chest, a man could begin at that point with a ruptured blood vessel, begin to bleed and could bleed to death. There could be any number of reflex mechanisms that could be set up to cause a complete standstill of his heart. I think that would be on a sudden death basis rather than some interval of time lapsing after that. If the force was sufficient, you could rupture a vessel from falling into a hole. That is the point. You said 'a car went into a hole' without stating the speed of the car. Of course, at a slow speed an automobile if it is suddenly stopped can do considerable amount of damage under certain circumstances. There is a possibility that where the front wheel fell with force into the stump hole suddenly, it then could produce death by injury to the stomach."

The objection interposed to the testimony was: "The hypothetical question and the answer thereto was inadmissible because the question was based upon facts, specifically, the facts regarding the speed of the truck, not placed in evidence by other witnesses."

Code § 38-1710 provides: "The opinions of experts, on any question of science, skill, trade, or like questions, shall always be admissible; and such opinions may be given on the facts as proved by other witnesses."

In *Ellis* v. *Southern Ry. Co.*, 89 *Ga. App.* 407 (79 S. E. 2d 541) a headnote written by the author of this opinion reads: "A witness should not be permitted to give his opinion on facts stated in a hypothetical question, which facts have not been testified to by other witnesses in the case prior to the asking of such hypothetical question." A similar expression is found in *Bryant* v. *State*, 197 *Ga.* 641, 652 (30 S. E. 2d 259). In the *Bryant* case, as in the *Ellis* case, no evidence had been introduced to establish the basic facts upon which the hypothetical question propounded to the witness and the witness's answers were predicated.

The true rule expressed in *Flanagan* v. *State*, 106 *Ga.* 109 (32 S. E. 80) is that, "An expert on insanity, as was the witness of whose evidence complaint is here made, may give an opinion based upon his own examination of a person, upon his observa-

tion of that person, or upon any state of facts, supported by some evidence in the case, which he assumes as true."

The view that an expert witness's opinion may be predicated upon facts placed in evidence by the testimony of other witnesses or by any other legal means is supported by *Elliott* v. *Georgia Power Co.*, 58 *Ga. App.* 151, 155 (197 S. E. 914), *Freeman* v. *State*, 190 *Ga.* 335, 337 (9 S. E. 2d 236), and *Atlantic & B. Ry. Co.* v. *Johnson*, 127 *Ga.* 392, 393 (56 S. E. 482, 11 L.R.A. (NS) 1119).

It is apparent that the objection was not broad enough to invoke a ruling of the court as to whether there was evidence in the record on which the hypothetical question could be properly based.

The objection to the doctor's testimony was not valid for another reason. The doctor did not, according to his own answer, accept the statement as to the speed of the deceased's truck as the predicate for his opinion, but on the contrary testified: "If the force was such force that it ruptured a vessel inside of his abdomen or inside his chest, a man could begin at that point with a ruptured blood vessel, begin to bleed and could bleed to death. There could be any number of reflex mechanisms that could be set up to cause a complete standstill of his heart. I think that would be on a sudden death basis rather than some interval of time elapsing after that. If the force was sufficient, you could rupture a vessel from falling into a hole. That is the point. You said 'a car went into a hole' without stating the speed of the car. Of course, at a slow speed an automobile if it is suddenly stopped can do a considerable amount of damage under certain circumstances. There is a possibility that where the front left wheel fell with force into the stump hole suddenly, it then could produce death by injury to the stomach."

The ground does not show error.

■ Ground 5 of the amended motion for new trial complains that the trial court erred in charging the jury: "Gentlemen of the jury, the proximate cause of an injury is such an act that a person of ordinary caution or prudence would have foreseen that some injury might result therefrom but not necessarily the one that did result therefrom.

"Gentlemen of the jury, the burden is on the beneficiary in this case to show by a preponderance of the evidence that the insurance company is liable under its policy, that is, the plaintiff must show that the death of Walter A. Hickman was covered by the terms of the policy. The test of liability of the defendant insurance company may be stated as follows: Did the condition of the insured in having, at the time of his death, a heart disease contribute to his death in whole or in part, directly or indirectly. If it did so contribute, the defendant in this case would not be liable and your verdict should be in favor of the defendant. On the other hand, if you should find that the alleged accident was the proximate cause of the death of the insured, then you would be authorized to find for the plaintiff in the amount stipulated in the policy of insurance."

There are several exceptions to the charge: "(a) It was confusing to the jury. (b) It was misleading to the jury. (c) It was erroneous and not sound as an abstract principle of law. (d) It was also erroneous for the reason that the question of the proximate cause of the death of the insured was not the question presented by the insurance policy sued upon; and, it was insufficient, under the terms of said policy, that an accident was the proximate cause of the death of the insured. (e) It was also erroneous in that it authorized the jury to find in favor of the plaintiff without any evidence that the death of the insured, Walter A. Hickman, resulted directly and independently of all other causes from bodily injuries sustained through purely accidental means, as is required by the policy of insurance sued upon."

The exception that the charge was misleading and confusing which did not point out the reason for either position is not explicit enough. *West Lumber Co. v. Schnuck,* 85 *Ga. App.* 385 (69 S. E. 2d 577); *Roberts v. State,* 88 *Ga. App.* 767 (77 S. E. 2d 825).

The exception (c) that the charge is incorrect and erroneous as an abstract principle of law raises only the question as to whether it is, standing alone, a sound pronouncement of law. *Tucker v. State,* 25 *Ga. App.* 196 (1) (102 S. E. 880); *Bankers Health &c. Ins. Co. v. Givens,* 43 *Ga. App.* 43 (157 S. E. 906);

*White* v. *State,* 141 *Ga.* 526 (1a) (81 S. E. 440). Unless the criticised charge is incorrect on its face, the court is not privileged to peruse the record to learn whether it is adjusted to the issue framed upon the pleading and evidence. *Anderson* v. *Southern Ry. Co.,* 107 *Ga.* 500, 501 (4) (33 S. E. 644). The charge here dealt with was a correct abstract statement of law.

Exception (d) raises no question for consideration, because the ground in which it is contained fails to set forth literally or in substance or to designate the pages of the record where it may be found, the pleadings and evidence, necessary to a clear understanding of the exception. Hence, as to exception (d) the ground fails to comply with the requirements of Code (Ann.) § 6-901. *Ready-Mix Concrete Co.* v. *Rape,* 98 *Ga. App.* 503 (6) (106 S. E. 2d 429); *Western Fire Ins. Co.* v. *Peeples,* 98 *Ga. App.* 365 (3) (106 S. E. 2d 91).

Exception (e) is subject to, and rendered incomplete, because the ground does not set forth literally or in substance or designate by record page number, the clause of the policy of insurance therein referred to, or the pleadings and evidence necessary to enable this court to pass upon the merits of the exception.

Consideration of the pleadings and evidence that form the issue as to the cause of the insured's death is necessary in passing on the merits of the exception, because they may have narrowed the issue to the question as to whether his death resulted solely from a heart trouble or the accidental injury alleged in the petition. In that event the charge would not be error. As a matter of fact, we observed in considering other grounds that the pleadings and proof made that exact issue. There was nothing in the record that indicated that the insured died from any other cause, than as the plaintiff contended, the accident, or as the defendant contended, a heart condition that may have aggravated the injurious effect of the injury.

It was not necessary that the judge quote the language of the policy in submitting the question to the jury, so long as his charge plainly limited the plaintiff's right of recovery to the coverage of the policy.

█ Ground 6 complains of the admission into evidence of a certain letter written by the plaintiff to the defendant. The ob-

jection interposed to the letter consists of separate statements of counsel. They were: "We have no objection except this letter of November 18th from Mrs. Hickman to the Mutual Benefit Health & Accident Association. We are willing to let that be introduced in evidence to show that notice was given but it still would be self-serving declarations on the part of the insured and we object to it on that ground. We object to it on the ground that it contains self-serving declarations. We admit that notice but we are not willing to admit the truth of the facts that are alleged in there."

It will be noticed that the objection was of a dual nature, being at once a qualified objection and motion that the court limit the purpose for which the letter might be considered by the jury. However, we will consider these statements as an objection to the admission of the letter, since there is no exception to the failure of the judge to limit the purpose for which the letter would be considered. The objection admits that the letter was admissible as evidence that the plaintiff's claim was given to the defendant. "It is never error to overrule an objection to evidence if it is admissible for any purpose. If it is desired to limit the effect of the evidence, the court should be requested to charge that the evidence is admitted for a special purpose and its effect limited to that purpose." *Hotel Dempsey Co.* v. *Miller*, 81 *Ga. App.* 233, 234 (4) (58 S. E. 2d 475).

"Where evidence is offered and objected to, if it is competent for any purpose, it is not erroneous to admit it. *Fidelity & Deposit Co.* v. *Nisbet*, 119 *Ga.* 316 (46 S. E. 444)." *Renfroe* v. *State*, 54 *Ga. App.* 215 (2) (187 S. E. 623).

"The failure of the court, in the absence of a written request, to limit the application of evidence admissible for any purpose is not error." *Jackson* v. *State*, 204 *Ga.* 47 (3) (48 S. E. 2d 864). A similar holding is found in *Swanson* v. *Hodges*, 96 *Ga. App.* 540 (1) (101 S. E. 2d 212).

The ground does not show error.

*Judgment affirmed. Nichols, J., concurs. Felton, C. J., concurs specially.*

FELTON, Chief Judge, concurring specially. I concur in the judgment but I cannot concur in all the reasons given for certain rulings in the majority opinion.

■ As to the refusal by the plaintiff to consent to an autopsy on her husband, in my opinion where, as here, there is no opportunity to request an autopsy before burial, the only thing which can determine whether the time within which the request was made was a reasonable time is the question of how much light a delayed autopsy would throw upon the cause of death. I do not think that the wounding of the feelings or sensibilities of the family would cut any figure in the determination of what was a reasonable time because the feelings and sensibilities of the family would be wounded, most likely, regardless of when the autopsy occurred. I agree with Judge Sibley's dissent in the Moore case, supra, under the peculiar facts of that case. Where, as in this case, the insurance company waited six months to request an autopsy, before the rights of the beneficiary are forfeited for refusal of such request, it is incumbent on the insurance company to show that the delayed autopsy would have thrown a considerable degree of light on the cause of death, and I do not think that a mere showing that a delayed autopsy would have been of "some" value in ascertaining the cause of death is sufficient to justify a forfeiture of the policy rights. In the Moore case the damage was to bones. In this case the damage allegedly was to more fragile parts of the body and it is very questionable whether an autopsy six months after burial would reveal much information as to the cause of death. In addition, I do not agree that the insurance company waived its right to demand an autopsy by a denial of liability after proof of loss, and I do not think that cases cited in the majority opinion are authority for the fact that the right to demand an autopsy was waived.

■ The court charged the jury as follows: "Gentlemen of the jury, the proximate cause of an injury is such an act that a person of ordinary caution or prudence would have foreseen that some injury might result therefrom but not necessarily the one that did result therefrom." In my opinion the charge is error as a definition of proximate cause. The definition is a definition of negligence, but I do not believe that the jury was confused or misled by this charge under the facts and circumstances and in view of the remainder of the charge.

On Motion for Rehearing.

In the case of *Fidelity-Phenix Fire Ins. Co.* v. *Berry*, 79 *Ga. App.* 179 (53 S. E. 2d 126) it is held: "Where in an action on a fire-insurance policy the declaration alleges compliance with the terms of the policy as to the filing of a claim, which was prerequisite to the filing of the action on the policy, it was error for the court to direct a verdict for the plaintiff when there was no evidence as to such compliance with the terms of the policy. This is true even if there was evidence as to a waiver of such compliance, in the absence of an amendment to the petition setting forth such waiver." A similar holding is *Neese* v. *Milwaukee Mechanics' Ins. Co.*, 84 *Ga. App.* 473 (66 S. E. 2d 172).

But in the instant case testimony was introduced that the defendant made an absolute and unequivocal denial of liability, before requesting that an autopsy be made on the body of the insured. No objection was made to the evidence. In *National Life &c. Ins. Co.* v. *Lain*, 51 *Ga. App.* 58 (3) 59, 60 (179 S. E. 751) is the holding: "Where evidence is admitted without objection, although there be no allegation in the declaration authorizing it, the court may properly charge the jury as to its legal effect, and where a party permits evidence to go to the jury without objection, and the jury find on such evidence, the losing party is not entitled to a new trial on the ground that the evidence does not correspond with the declaration, if the declaration could, by amendment, have been made to cover the evidence. *Georgia Railroad* v. *Lawrence*, 74 *Ga.* 534; *Central Ry. Co.* v. *Attaway*, 90 *Ga.* 656-659. 'Although the pleadings may not present the whole issue, yet if it be fully made by the evidence without objection, it is too late, after verdict for the losing party, to make that the ground of a motion for a new trial.' *Howard* v. *Barrett*, 52 *Ga.* 15. See also *Seabrook* v. *Brady*, 47 *Ga.* 651, 659; *Savannah, Fla. & Western Ry. Co.* v *Barber*, 71 *Ga.* 644, 648; *Savannah &c. Ry.* v. *Grogan*, 117 *Ga.* 461 (43 S. E. 701); *Haiman* v. *Moses*, 39 *Ga.* 708; *Field* v. *Martin*, 49 *Ga.* 268, 271; *M. E. Church* v. *Dudley Co.*, 137 *Ga.* 68 (6), 69 (72 S. E. 480); *Artope* v. *Goodall*, 53 *Ga.* 318, 323. These rulings are based upon the principles that if objection were

made to the testimony upon the ground that it was not authorized by the pleadings, the pleadings might have been so amended as to authorize the introduction of the testimony. *Gainesville & N. W. R. Co.* v. *Galloway*, 17 *Ga. App.* 702 (4) (87 S. E. 1093); *Columbia Fire Insurance Co.* v. *Tatum*, 46 *Ga. App.* 475 (4) (167 S. E. 911). In the instant case (a suit on a policy of life-insurance) the plaintiff pleaded that all the premiums due under the terms of the policy had been paid in full, and she did not plead a waiver by the insurance company of such terms. On the trial the evidence failed to show payment of the premiums as alleged but it did disclose such a course of dealing by the insurance company, in respect to receiving the premiums after they were due, as authorized the jury to find that the provisions of the policy requiring the payment of premiums within a specified time had been waived by the company; and the evidence showing such a waiver was admitted without objection."

*Irvin* v. *Locke*, 200 *Ga.* 675, 679 (38 S. E. 2d 289) contains the pronouncement: "It thus appears from the evidence of the agent making the alleged tender, when taken in its entirety, that is, on both direct and cross-examination, that the tender was, while originally unconditional and as such rejected, ultimately made conditional, in that the vendor was required to execute the deed called for by the bond. There was, therefore, under the decisions last cited, a variance between the allegata in the petition and the probata adduced on the trial; and the evidence, thus varying from the allegata of the petition, could have been objected to as failing to conform. However, this was not done, and the evidence was admitted without objection. Had the evidence been objected to, the plaintiff, without adding a new and distinct cause of action, could have amended her petition, by alleging that upon the outright tender being made, the defendant refused it unless an additional $1000 was added thereto. Since the law does not require vain and useless procedure, a refusal by the obligor to accept the original outright tender in accordance with the contract, without an additional $1000 being added thereto, dispensed with any necessity of making same; and this is true although the plaintiff might have

subsequently made an additional tender coupled with the condition that the defendant would execute the deed, which the defendant refused to do for the reason given that an additional $1000 was required. *Ansley* v. *Hightower,* 120 *Ga.* 719 (4) (48 S. E. 197). Under the circumstances, the failure of the defendant to object to the testimony dispensed with the necessity of amending her petition by setting forth the absence of a necessity for tendering, and the case stands as if the petition had been amended accordingly. *Napier* v. *Strong,* 19 *Ga. App.* 401 (2) (91 S. E. 579); *Ocean Steamship Co.* v. *Williams,* 69 *Ga.* 251 (4a); *Steed* v. *Rees,* 192 *Ga.* 20, 24 (2) (14 S. E. 2d 474); *Taylor* v. *Taylor,* 195 *Ga.* 711, 721 (11) (25 S. E. 2d 506); *Grice* v. *Grice,* 197 *Ga.* 686, 699 (30 S. E. 2d 183)."

In *Taylor* v. *Taylor,* 195 *Ga.* 711, 721 (25 S. E. 2d 506) the holding is the same as in *National Life &c. Ins. Co.* v. *Lain,* 51 *Ga. App.* 58, supra; indeed the language of the case is almost identical. Recognition has been uniformly accorded the principle throughout Georgia's judicial history. *Harrison* v. *Young,* 9 *Ga.* 359 (7). So in our opinion not only was it a question for the jury as to whether the plaintiff complied with the policy provision as to the autopsy, but we are also of the opinion that there was sufficient evidence to support a finding that the defendant waived the clause of the policy to which we have referred by previously denying liability under the policy.

*Judgment adhered to.*