## JOHN C. JAMES v. MERCHANTS LIFE & CASUALTY COMPANY.[1]

June 7, 1912.

Nos. 17,599—(119).

**Accident insurance policy — questions for jury.**

In an action upon an accident insurance policy it is *held* that the questions whether decedent's death was caused by accidental means, whether there appeared upon his body external evidence of the injury so received, whether he in fact paid the last premium due upon his policy at or about the time it became due, and whether defendant waived, by the acceptance of other payments irregularly made, strict compliance with the contract in this respect, were issues for the jury under the evidence, and were properly submitted to them.

**Waiver — litigated question.**

The question of waiver of strict compliance with the policy in respect to prompt payment of premiums *held* to have been litigated on the trial, though not an issue under the pleadings.

[1] Reported in 136 N. W. 582.

[Note] What constitutes an accident within the meaning of an accident insurance policy, see note in 30 L.R.A. 206.

Action in the district court for St. Louis county to recover $330 upon an accident insurance policy. The case was tried before Ensign, J., and a jury which returned a verdict in favor of plaintiff for $335.72. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

P. W. Guilford and John Jenswold, Jr., for appellant.

Spencer & Marshall, for respondent.

BROWN, J.

Action upon an accident insurance policy, in which plaintiff had a verdict, and defendant appealed from an order denying its alternative motion for judgment or a new trial.

The facts, in brief, are as follows: Plaintiff's intestate became a member of defendant association and the holder of one of its policies of insurance on October 17, 1908. The policy was one insuring decedent against accidental injury or death, and provided for indemnity in the amount and in the respects therein pointed out. The policy provided, among other things, that a failure to pay the premiums as they became due should forfeit the rights of insured thereunder and wholly render the policy null and void, and, further, that the policy did not cover any disability, fatal or nonfatal, of which "there shall be no external or visible mark on the exterior of the body." The premiums were due and payable quarterly on the first day of January, April, July, and October of each year, and a failure to pay the same, as already stated, forfeited all rights under the contract. Decedent received an accidental injury on July 4, 1910, from which he died on July 7 following. After the presentation of formal proofs of death and the refusal of defendant to pay the amount claimed to be due under the policy, this action was brought to recover the same.

The complaint alleges a full compliance with all the terms and conditions of the policy, and that the death of decedent was accidental, or the result of accidental injury. Defendant interposed in defense: (1) The failure of decedent to make payment of the premium which fell due July 1, 1910, and that in consequence thereof

the policy became null and void; and (2) that if decedent received any injury resulting in his death, as alleged in the complaint, there were no external marks upon the exterior of the body indicating the same, and, therefore, no recovery could be had.   The reply was a general denial.

The questions presented to this court are: (1) Whether the court below erred in denying defendant's motion for judgment notwithstanding the verdict; and (2) whether a new trial should have been granted for errors in the admission or exclusion of evidence or in the instructions to the jury.

1. The principal controversy in the court below was whether the July, 1910, premium had ever been paid.   Under the rule laid down in Gardner v. United Surety Co. 110 Minn. 291, 125 N. W. 264, 26 L.R.A.(N.S.) 1004, the burden of establishing nonpayment was upon defendant, and defendant upon trial assumed the same.

The general collector and manager of defendant's business at Duluth, the residence of decedent, and who collected all prior payments from decedent, testified that the July premium was never paid, either before or after July 1.   If his testimony expressed the truth, and he was not mistaken in the matter, defendant was entitled to a verdict.

But plaintiff in rebuttal offered certain evidence tending to show that this payment was in fact made to this collector either before July 1, or within three or four days thereafter.   No direct evidence of such payment was presented, but the testimony tending to show it was in the form of admissions by the collector, and an admission of the president of defendant to the effect that in his opinion the collector had in fact received the money and had made a mistake in not reporting it.   It was also testified that the president of the company, in connection with the statement just referred to, offered to return the money.   The president, however, denied this statement, or the offer to return the money.   The strongest item of evidence tending to show that payment had been made prior to July 5 was given by a witness called by plaintiff, who testified that he overheard a conversation between decedent and the collector, on that date, in which decedent requested a receipt for the payment, and the agent

replied that he would hand it to him (decedent) "the next time he came up town." This the collector denied. A majority of the court, the writer not concurring, are of the opinion that the evidence was competent, and made the question of payment one of fact for the jury, and that the verdict is sustained.

It follows, therefore, that the defendant's motion for judgment notwithstanding the verdict was properly denied.

2. The evidence left the question as to the precise date upon which the payment was made, if at all, in some doubt. In other words, it was not made clear whether the payment was made before the first, or somewhere around the fourth, of the month. It appeared from the evidence, in this connection, that other payments had been made after they were due, and that they were accepted by the agent and remitted to the company. In view of this evidence, the court charged the jury, in substance and effect, that if defendant had permitted decedent to make other payments after they became due, and at a time when he was in default, they were at liberty to find the policy in force, even though they further found the July payment not to have been made when due; in other words, that the jury might find from the previous conduct of defendant a waiver of strict compliance with this branch of the contract. Defendant complains of this instruction: (1) Because not an issue under the pleadings; and (2) because no general custom in respect to the acceptance of overdue payments was shown.

We are of opinion, and so hold, that the instructions of the court were proper. Though the issue of waiver was not presented by the pleadings, the course of the trial made it an issue, and defendant is in no position to contend to the contrary. It appears that defendant furnished decedent, when the policy was issued, a receipt card in which all payments were noted by the collector when made. This card affirmatively showed, by entries made therein by the collector, that some of the prior payments were made from four to ten days after due. This was offered in evidence by plaintiff and was received without objection. It appeared from other testimony that payments had been made irregularly, some of which was brought out by counsel for defendant. Morgan, the collector who had charge of this collection, testified as follows:

"By Mr. Guilford: Well, in some cases, Mr. Morgan, the payments were not always made right on the first day of the month? A. No, sir; they were not. Q. You may state whether or not he always paid quarterly, or sometimes whether or not the quarter was split up into months? A. Well, it was split up; he didn't always pay it quarterly."

Further questions by counsel for plaintiff to this witness on cross-examination emphasized the fact that payments were irregularly made, and in some instances some days after due. In view of the evidence, some of which defendant brought out, and all received without objection, it is quite clear that the question of waiver of strict compliance with the contract respecting the time of payment was properly treated as an issue in the case.

The question of general custom was not involved in the action, and Leland v. Modern Samaritans, 111 Minn. 207, 126 N. W. 728, and other similar cases are not in point. The question here was whether a payment made after the same became due, and accepted and retained by defendant, was effectual, and retained the policy in full force and effect, and not whether the failure to pay before the death of the insured was waived by a general custom such as that shown in the cases referred to; or, expressed in a different way, whether, since decedent had been permitted to pay at irregular times, monthly or quarterly, and after the due date, defendant can be heard to repudiate a payment so made, which it still retains. Of course, defendant denied the payment; but the jury found it to have been made, and it seems reasonably clear that defendant cannot under such circumstances invoke the doctrine of forfeiture. There was no error in the instructions upon this subject.

As heretofore stated, the evidence left the precise date of payment in doubt; but we are clear that it was made prior to decedent's injury, if it was made at all. The question, therefore, whether a payment after injury would be effectual, is not involved. Nor is the question of the authority of the agent to waive a strict compliance with the contract as respects payment of premiums presented. Presumptively the payments made by decedent were reported to the company when made, thus giving notice to defendant of the irregular

method of making them. There is no suggestion in the evidence to the contrary, and we assume that they were so reported. And since the company, through its managing officers, had notice of the facts, the waiver must be attributed to it, and not to the act of the agent in receiving the overdue payments.

3. Some questions were put to witnesses called by defendant respecting the drinking habits of decedent, objections to which were sustained. We discover no error in these rulings. It was proper for defendant to show that the death of decedent was caused otherwise than as a result of the injury alleged to have been received by him on the fourth of July. But no offer of evidence of that character was shown, and we hold that his drinking habits, standing alone, were irrelevant and immaterial.

4. The evidence was sufficient to justify the jury in finding that decedent's body disclosed evidence of external injury, and that the injury received by him was accidental, and the proximate cause of his death.

Order affirmed.