## Terpeluk *v.* Insurance Company of North America, Appellant.

Argued November 10, 1958; reargued March 18, 1959. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN and WATKINS, JJ.

*Richard W. Hopkins,* with him *White, Williams & Scott,* for appellant.

*Max C. Baylinson,* for appellees.

OPINION BY WRIGHT, J., April 16, 1959:

George Terpeluk and his wife, Anna, instituted suit in assumpsit against the Insurance Company of North America on a policy of fire insurance with extended coverage, alleging a loss by windstorm. The company defended on the grounds (1) that the loss was not caused by windstorm and (2) that plaintiffs had failed to comply with a condition of the policy requiring them to commence suit "within twelve months next after inception of the loss". Defendant's motion for a compulsory nonsuit was overruled, and its point for binding instructions was refused. The jury returned a verdict for the plaintiffs, the amount of which is not in dispute. Motions for a new trial and for judgment n.o.v. were overruled, and judgment was entered on the verdict. The defendant has appealed.

The record discloses that the policy in question was written for a period of five years from September 21, 1954, and covered a brick building situated at 2310 Aspen Street in the City of Philadelphia. The policy was admittedly in force on October 15, 1954, when there occurred a violent windstorm to which the weather bureau assigned the name Hurricane Hazel. The Terpeluk theory was that the windstorm caused damage to their building, and it is conceded by appellant that this issue was resolved by the verdict of the jury. On October 19, 1954, the loss was reported to the insurance agent from whom the policy had been procured. The agent sent a notice of the loss to the company, and Terpeluk was subsequently instructed by the agent to obtain an estimate of the cost to repair the damage. Plaintiff's exhibit No. 4, dated October 22, 1954, is an estimate from the contractor in amount of $2800.00. The insurance agent forwarded this estimate

to the company. On October 29, 1954, the company issued a draft in amount of $28.00, which the Terpeluks refused to accept. A representative of the insurance company, called by the plaintiffs, testified on direct examination that the issuance of this draft was a mistake. He explained that, because of the tremendous number of claims due to Hurricane Hazel, the company was "paying all claims under $300.00 without looking at them", and that the Terpeluk claim had been misread.[1] On November 5, 1954, the insurance agent returned this draft to the company. On November 16, 1954, the claim was referred by the company to an independent adjuster. His representatives examined the building on several occasions, and arranged an inspection by a professional builder. On January 28, 1955, the Terpeluks received a notification from the City of Philadelphia that the building was unsafe and should be immediately repaired. This notice was given to the insurance agent and forwarded by him to the company. On February 27, 1955, the Terpeluks forwarded to the company the estimate of another contractor in the amount of $2800.00. The adjusters and representatives of the company thereafter concluded that the damage was not caused by windstorm. In late March or early April, 1955, the Terpeluks were definitely informed that the company would not pay the claim.[2] On April 6, 1955, counsel for the Terpeluks

[1] "We had thirty-five people in there handling these things. I didn't see every claim that came in. I had thirty thousand claims . . . Your Honor, we had so many claims that we did not have enough personnel to handle them. We brought people in from all over the United States, and we had to use outside services of adjusters".

[2] "Q. When you saw Mr. Coulston in March or April of 1955, he told you that the Insurance Company of North America was not going to pay his claim? A. That is what he told me. Q. And you told him you were going to go ahead and get your lawyer?

wrote to the company regarding the matter. On April 12, 1955, he was also definitely informed that the claim would not be paid. Suit was not commenced until November 23, 1955, more than thirteen months after the damage had occurred.

The real issue on this appeal arises from the submission to the jury by the trial judge of the question "whether the defendant, by its conduct, had waived the provision of the policy requiring the commencement of suit by the plaintiff within twelve months after the inception of the loss". Appellant contends that it did not waive, and is not estopped to assert, the standard one-year limitation clause "where liability under the policy was denied six and one-half months before the year expired, and the insured advised the company that suit would be brought and immediately thereafter engaged a lawyer who was also advised more than six months prior to the expiration of the year that the company would not pay the claim". The contention of appellees is that the "insurer misled its insured to suppose" that the claim had been settled and that the company was satisfied that the damage had been suffered, wherefore the company (1) waived the limitation period, and (2) is estopped from its enforcement.

A policy condition limiting the time in which suit may be brought is valid and reasonable, even though it shortens the statutory period otherwise applicable: *Ercole v. Metropolitan Life Insurance Co.,* 155 Pa. Superior Ct. 549, 39 A. 2d 293; *Tellip v. Home Life Insurance Co.,* 152 Pa. Superior Ct. 147, 31 A. 2d 364. However, it has been held that such a condition may be "waived" by the insurer: *Bonnert v. Pennsylvania Insurance Co.,* 129 Pa. 558, 18 A. 552. In *O'Connor v.*

A. Yes . . . Q. You knew, when he left you, that the Insurance Company of North America was not going to pay that claim? A. Yes. I said I was going to go to court".

*Allemannia Fire Insurance Co.,* 128 Pa. Superior Ct. 336, 194 A. 217, President Judge KELLER said: "Some confusion has resulted from a careless and, perhaps, not wholly accurate use in the decisions of the words 'waive' and 'waiver' in connection with the clause in the policy limiting the time within which an action may be brought upon it, when what was really meant was such conduct on the part of the insurer or its authorized representatives as to excuse the insured from strict compliance with the terms of the policy and to extend the period for bringing suit. This result may have been contributed to by applying to a mere extension of the limitation of suit clause in the policy the same effect as the law attaches to an express or implied waiver of proofs of loss, or waiver of ground of forfeiture or avoidance of the policy, which are of a nature, that once waived they cannot be revived and thereafter insisted upon by the insurer, unless the waiver was obtained by fraud on the part of the insured . . . Undoubtedly there may be an express *waiver* of the limitation of suit clause in the policy, and when there is such a definite *waiver,* it is no longer in force and thereafter the *statutory* limitation as to contracts applies; but our Supreme Court has ruled that when the insured seeks to excuse his failure to bring suit within the period of time fixed in the policy by conduct of the insurer which misled the insured to his injury— the failure of the insured to bring suit within the prescribed time being due to the insurer's act or conduct—, the limitation has not been fully and completely *waived,* in the strict sense of the word, but has only been suspended or extended, and begins to run when the insurer's conduct no longer excuses the insured's failure to bring suit . . .

"Following the decisions . . . we now definitely hold that where the acts or conduct of the insurance com-

pany and its duly authorized representative have been such as to estop it from strictly enforcing the limitation clause prescribed in the policy, resulting in its suspension, postponement or extension, the clause begins to run again when the company definitely announces its refusal to pay under the limitation clause and the insured, who is in full possession of the facts, must bring his or her action within a reasonable time thereafter, not exceeding twelve months following such refusal".

In *Sudnick v. Home Friendly Insurance Co.*, 149 Pa. Superior Ct. 145, 27 A. 2d 468, there was an action by the beneficiary on a policy of life insurance which contained a condition that no suit should be maintainable unless commenced within six months next after the death of the person insured. It was held that the conduct of the company's representatives "gave plaintiff reasonable ground for believing that the time limit would be extended, or that such provision would not be strictly enforced". President Judge KELLER again stated that plaintiff had a reasonable time after the definite rejection of his claim within which to bring suit, not exceeding the period of limitation.

Appellant argues that it at no time promised to pay or settle the claim, and did not indicate in any way that suit would be unnecessary or that it would not insist upon the limitation period. However, we agree with the court below that the factual situation, heretofore detailed, required the submission of this controlling issue to the jury. As stated in the well-considered opinion of President Judge BROWN: "In the present case, there is ample evidence to support the finding that plaintiffs relied upon defendant's failure to reply to letters and calls, or to respond to the estimates and the notice from the city that were sent to it, in assuming that their claim was being

processed for settlement. This is especially so in view of the fact that a check in settlement of the claim had been sent which was apparently drawn for an incorrect sum due to a clerical error. Surely, there was justification for a reasonable belief that liability under the policy was not being denied.

"It is true that defendant finally denied liability under the policy some five months after the loss occurred. Plaintiffs had a reasonable period of time after that date within which to commence suit. Actually, the action was brought on November 23, 1955, which was five weeks later than the expiration of one year from the date of the loss. It can not be concluded that this was, as a matter of law, an unreasonable delay".

Appellant further argues that in both the *O'Connor* and *Sudnick* cases settlement negotiations continued after the expiration of the limitation period, while in the case at bar the denial of liability occurred prior to the expiration of that period. It therefore asserts that the precise issue has not been decided in Pennsylvania, and that the weight of authority in other jurisdictions is that there can be no estoppel where liability is denied in sufficient time to bring suit within the period remaining. There is an extensive annotation in 29 A.L.R. 2d 636. We are of the opinion, however, that the issue actually is ruled by the unequivocal pronouncements of President Judge KELLER in the *O'Connor* and *Sudnick* cases. It is our view that, if the conduct of an insurer after a loss misleads its insured for a period of time, as the conduct of this appellant did according to the finding of the jury, then the limitation of the insured's right to bring suit is suspended during that period of time and begins to run on the date of denial of liability. The case of *Selden v. Metropolitan Life Insurance Co.,* 354 Pa. 500,

47 A. 2d 687, cited by appellant can be distinguished on its unique facts. It should also be noted that there was a persuasive dissent in the *Selden* case by Mr. Justice (now Chief Justice) JONES in which he states that any construction other than that the period of limitation remains constant "would produce harsh and unjust results and a lack of uniformity in operation".

Appellant's alternate contention on this appeal is that it is entitled to a new trial because of a purported error in the charge, to which specific exception was taken. The trial judge charged the jury as follows: "When a definite reason for declining to pay is asserted and the plaintiff thus led to believe that it is the sole cause and is misled as to his injury, the company is estopped from setting up a different ground". This statement of the law is practically a verbatim quotation from the opinion in *Simons v. Safety Mutual Fire Insurance Co.*, 277 Pa. 200, 120 A. 822. It is asserted that the error was compounded by including in the charge the content of plaintiff's point No. 7 as follows: "A waiver may be inferred from any act evidencing a recognition of liability or a denial of liability on some other ground". This statement of the law is practically a verbatim quotation from the opinion in *Bobereski v. Insurance Company of Pennsylvania*, 105 Pa. Superior Ct. 585, 161 A. 412. Appellant stresses the fact that the defense of failure to bring suit within the limitation period did not exist at the time liability was denied.

Our examination of the charge as a whole does not lend support to appellant's contention that a new trial must be granted. At the outset of his charge the trial judge instructed the jury that there were two questions to be determined. The first was whether the wall had been damaged by windstorm. The second was whether the company by its conduct had

waived or extended the provision requiring the commencement of suit within twelve months. After reviewing the evidence at considerable length the trial judge again stated the two questions involved. He then briefly mentioned several legal principles relating to waiver and estoppel. At no point did he say that the jury should consider whether the company refused payment on one ground and thereafter endeavored to assert another ground for its denial of liability. In concluding his charge, the trial judge again stated the two questions for the jury's determination. Both questions were fairly submitted, and the excerpts as to which complaint is made must be considered in the light of the entire charge. The case of *Hepler v. Hammond,* 363 Pa. 355, 69 A. 2d 95, cited by appellant, is not controlling. We find no error requiring a new trial.

Judgment affirmed.

---

DISSENTING OPINION BY ERVIN, J.:

On September 21, 1954, appellees purchased an insurance policy from the appellant. The policy covered the appellees' house for damage by windstorm. On October 15, 1954, Hurricane Hazel occurred, resulting in the alleged damage to appellees' property. The loss was reported to the agent for the appellant company and on October 19, 1954, proofs of loss were filed. On October 22, 1954, a $2,800.00 estimate was filed with the appellant company and a check in the amount of $28.00 was sent in full settlement, payable to appellees. Appellees refused the check and it was returned to the company on November 5, 1954. In early April of 1955, the company informed appellees that it would

not pay the claim. At the same time appellees said they would go to court. On April 12, 1955, the company advised appellees' attorney that the claim would not be paid.

The appellees called Walter C. Couston, an adjuster for the defendant, who testified on direct examination that because of the tremendous number of claims due to the hurricane, 35 part-time people were employed and that all claims under $300.00 were being paid without looking at them. Somebody misread the estimate of $2,800.00 as $28.00 and a check was sent for $28.00.

The policy in question contained a clause which limited the institution of suit to one year from the date of the loss. Suit was instituted on November 23, 1955, more than thirteen months after the loss.

The appellees contend that the appellant is estopped from strictly enforcing the limitation clause for the commencement of the action. In 29 A.L.R. 2d, page 650, it is stated: "The usual basis for not permitting the insurer to take advantage of a contractual limitation being that the insured was induced by the conduct of the insurer not to bring suit until after the expiration of the period of limitation, the duration of the negotiations which the insured claims deterred him from bringing action is quite naturally considered by many courts to have a large bearing on the issue of waiver or estoppel. Hence, in a number of cases, it has been held or indicated that the conduct relied upon to operate as a waiver or estoppel must have continued either to or very near the end of the period of limitation, or, as it is more frequently stated, that there cannot be a finding of waiver where a reasonable time remains in which to bring suit within the period of limitation after the claimant is no longer justified in relying upon the conduct of the company, because of a denial of liability, refusal to pay, or other circum-

270

stances from which the termination of negotiations should have been inferred."*

In *J. V. Bonnert v. Pennsylvania Insurance Co.*, 129 Pa. 558, 18 A. 552; *O'Connor v. Allemannia Fire Insurance Co. of Pittsburgh*, 128 Pa. Superior Ct. 336, 194 A. 217, and *Sudnick v. Home Friendly Insurance Co.*, 149 Pa. Superior Ct. 145, 27 A. 2d 468, relied upon in the majority opinion, the insurance carrier negotiated for settlement so close to the end of the limitation period or beyond the end of the period as to prevent the bringing of suit within the period.

In the case at bar the appellees and their attorney had six months to bring suit after the appellant company gave notice that the claim would not be paid and the court below should have pronounced, as a matter of law, that this was a reasonable time.

I would reverse and grant judgment n.o.v. for the appellant.

WOODSIDE and WATKINS, JJ., join in this dissenting opinion.

---

* *O'Connor v. Allemannia Fire Ins. Co.* (1937), 128 Pa. Superior Ct. 336, 194 A. 217; *Sudnick v. Home Friendly Ins. Co.* (1942), 149 Pa. Superior Ct. 145, 27 A. 2d 468.