## JOSEPH C. O'DONNELL AND ANOTHER v. CONTINENTAL CASUALTY COMPANY.

116 N. W. (2d) 680.

August 3, 1962—No. 38,366.

*Danforth & Allen,* for appellant.
*Burns & Allen,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Action for $5,000 and interest by Joseph C. O'Donnell and Elizabeth A. O'Donnell against Continental Casualty Company on an accident insurance policy issued by said company upon the life of their brother, James J. O'Donnell, in which they were named as beneficiaries and which provided for payment of the sum of $5,000 in case of the accidental death of the insured. On September 25, 1956,

the insured sustained injuries in an automobile accident from which he died the following morning.

Defendant did not deny liability on the policy but failed and refused to make payment to the beneficiaries thereunder, and on March 31, 1959, the present action to recover the proceeds of such insurance and interest thereon was instituted.

Defendant's only defense was that recovery under the policy was barred because this action had not been commenced within a 2-year limitation period provided in the policy. In addition defendant presently also contends that interest should not have been awarded the beneficiaries since no proof of loss was ever furnished by them and no determination of its liability was made until the trial.

At the close of the testimony, the trial court directed a verdict in plaintiffs' favor for the face amount of the policy and further directed that interest at the rate of 6 percent per annum should be awarded from and after December 26, 1956, the date upon which the court determined payment on the policy became due.

The policy which was in effect at the time of the accident contains the following provisions material to a determination of the issues presented here:

"STANDARD PROVISIONS

\*   \*   \*   \*   \*

"6. The Company upon receipt of such notice, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not so furnished within fifteen days after the receipt of such notice, the claimant shall be deemed to have complied with the requirements of this policy as to proof of loss upon submitting within the time fixed in the policy for filing proofs of loss, written proof covering the occurrence, character and extent of the loss for which claim is made.

"7. Affirmative proof of loss must be furnished to the Company at its said office \* \* \* within ninety days after the date of such loss.

"8. The Company shall have the right and opportunity \* \* \* to make an autopsy in case of death where it is not forbidden by law.

\*   \*   \*   \*   \*

"14. No action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty days after proof of loss has been filed in accordance with the requirements of this policy, nor shall such action be brought at all unless brought within two years from the expiration of the time within which proof of loss is required by the policy."

Shortly after defendant learned of the death of the insured and while the wake was being held on the day prior to the funeral, the claim manager of its health and accident department demanded of one of the beneficiaries that an autopsy be performed upon the deceased-insured, and directed his attention and that of the beneficiaries' counsel to the fact that the policy extended this right to the insurer. The claim manager also stated to them that there should be an autopsy because defendant had been informed that the cause of the insured's death was "a cerebral hemorrhage" which might not be covered by the policy. This beneficiary then informed him that since the funeral was taking place the following morning the beneficiaries did not wish an autopsy performed. Their counsel then advised the claim manager that insured's death certificate specified that the cause of his death was cerebral hemorrhage "due to trauma or injury." The claim manager then stated: "We are within our rights demanding the autopsy, and we will not pay the claim unless we get it." Counsel for the beneficiaries testified that the claim manager also told him at that time that "if you won't agree to have an autopsy performed then I will get an order of the Court, and have his body exhumed, and we will have an autopsy then." At no time did the claim manager or anyone acting for the defendant deny liability on the policy. Thereafter, the beneficiaries were never informed by the defendant or any of its representatives that it had abandoned its intention of procuring a court order for the autopsy, or had reached a final determination on the question of its liability, nor were proofs of loss ever furnished by it to the beneficiaries as provided in paragraph 6 of the policy. As indicated above, the present action was commenced on March 31, 1959.

At the close of the trial, in directing a verdict in favor of plaintiffs, the trial court stated:

"* * * Everybody admits that James O'Donnell was accidentally killed on September 26th, 1956; and admits that the plaintiffs are the beneficiaries in the policy; the defendant insurance company admits that it had a policy covering Mr. O'Donnell, and that it was in full force and effect, and the premium had been paid, and admits they knew he was killed; admits that they owed this money and should have paid it promptly, and admits they have no defense whatever morally or honestly to this claim, but they seek to avoid the payment of this debt, which they admit they owe, solely on the ground that the plaintiffs were a little dilatory in commencing the suit to recover money which they never should have been required to sue for. To me this is a rather shocking situation. I have practiced law in this state for over fifty years, and a good portion of that time I was counsel for many insurance companies. I can say I have always been very highly impressed with the insurance business, and I want to say that I never saw an insurance company adopt this kind of an attitude in the fifty years that I have been in business. * * * Normally insurance companies and other honorable business men do not seek to avoid the payment of their just debts because of a lapse of time to sue, but they assert this defense only against claims which perhaps they hadn't heard of before, or which they suspect are not honest claims, and there is good need for and there should be limitations of that kind for suits to be brought within a reasonable time, so that the parties can find witnesses and present the facts to the jury. * * * The Court is of the opinion here, however, that under the terms of this policy the time within which to bring suit started to run at the time when the policy required that proofs-of-loss be furnished. Now, if the company had carried out its part of the contract, and had presented proofs-of-loss to be filled out, and they had been filled out, this case would be barred. The company never presented any proofs-of-loss. They never even asked the plaintiffs to offer any proof of the facts. Consequently the time never arrived when under this policy proofs-of-loss were required, and therefore the Court is of the opinion that the defense attempted to be asserted here is not available to the defendants, and it is making no objection to the claim on the merits, so that the Court feels that it is his obligation to instruct the jury to

return a verdict in favor of the plaintiffs for the full amount of the policy, with interest at 6% [the specific amount of the verdict was fixed by the court at $6,125, of which $5,000 was principal] * * *."

Defendant subsequently moved for judgment notwithstanding the verdict or a new trial on the ground that the verdict as directed is contrary to law and not justified by the evidence. From an order denying this motion the present appeal is taken.

■ We are of the opinion that the evidence presented raised a fact issue as to whether defendant by its conduct had waived or was estopped from asserting as a defense under the policy the provision which required that actions thereunder be brought within 2 years from the expiration of the time within which proof of loss was required by the policy. This court has held that a policy provision giving an insurer the right to demand an autopsy to determine the cause of death of an insured is valid and that refusal to grant a request therefor may defeat an action on the policy provided the request is made within a reasonable time and under reasonable circumstances. Johnson v. Bankers Mutual Cas. Ins. Co. 129 Minn. 18, 151 N. W. 413, L. R. A. 1915D, 1199, Ann. Cas. 1916A, 154; Cavallero v. Travelers Ins. Co. 197 Minn. 417, 267 N. W. 370. See, Annotation, 30 A. L. R. (2d) 837; 29A Am. Jur., Insurance, § 1416. Defendant does not rely upon the refusal of plaintiffs to permit the autopsy as a defense in this action, but asserts that, regardless of the controversy with reference thereto, plaintiffs were bound under Standard Provisions 6, 7, and 14 of the policy to institute their action within 2 years from the expiration of the 90-day period within which they were required to file proof of loss under the policy, which 2 years had expired at the time the present action was instituted.

■ We feel that the facts outlined might well sustain a finding that defendant, by its conduct with reference to the autopsy, is estopped from asserting as a defense in this action the limitation provisions in Standard Provisions 7 and 14 of the policy. The positive statements of its claim manager to plaintiffs' counsel that an autopsy would be performed after the funeral and that if necessary a court order for such purpose would be obtained might well sustain a finding that in

reliance thereon plaintiffs delayed commencement of their action on the assumption that the insurer would make payment under its policy after an autopsy satisfied it that the insured's death was accidental. In such a situation plaintiffs could well believe that some communication to them from defendant would be made with respect to the autopsy and on the question of its liability which had never been denied. If defendant did nothing along the line of its expressed intent and took no steps to advise plaintiffs as to whether it had abandoned the idea of an autopsy, plaintiffs' delay in taking any action upon the policy can scarcely be attributed to any fault on their part. The right to have an autopsy rested entirely with defendant and its inaction thereon and its failure to forward proofs of loss forms to plaintiffs certainly could be found to have justified the latter in hoping that a settlement was contemplated which would eliminate the need for litigation.

■ It is well settled that an insurer, by its statements or conduct, may waive or be estopped from asserting as a defense to an action on a policy standard or statutory provisions incorporated therein which limit the time within which to commence an action thereunder. Thus, it has been held that such a waiver or estoppel is established by an insurer's request for delay to permit further investigation, 29A Am. Jur., Insurance, § 1803; or to obtain additional proofs of loss which cannot be furnished until after or near the expiration of the limitation period, Meekins v. Aetna Ins. Co. 231 N. C. 452, 57 S. E. (2d) 777, 15 A. L. R. (2d) 949; Bloodgood v. Massachusetts Benefit Life Assn. 19 Misc. 460, 44 N. Y. S. 563; or by its express or implied admissions of liability, coupled with prolonged negotiations through adjusters during which insured is led to believe that his claim will be settled. Insurance Co. v. Brodie, 52 Ark. 11, 11 S. W. 1016; Allemania Fire Ins. Co. v. Peck, 133 Ill. 220, 24 N. E. 538; Little v. Phoenix Ins. Co. 123 Mass. 380, 25 Am. R. 96. See, also, 41 Yale L. J. 1071; Terpeluk v. Insurance Co. of North America, 189 Pa. Super. 259, 265, 150 A. (2d) 558, 561; Killips v. Putnam Fire Ins. Co. 28 Wis. 472, 482, 9 Am. R. 506, 512.

This court has expressed a like viewpoint. Thus, in Stewart v. Na-

tional Council, 125 Minn. 512, 515, 147 N. W. 651, 653, this view is expressed as follows:

"* * * Under the provisions of this contract the insurance company, by exercising a right given thereby, namely, that of determining in its own way the question of its liability, may occupy * * * the greater portion or the whole time limited to the insured within which to bring the action, thus materially impairing that right or destroying it altogether. * * *

"* * * The legal effect of the clause, suspending the right of action pending the determination by the association of its liability, is simply to toll the running of the limitation period until that determination is made. The result is far more satisfactory, and seems more consistent with principle, than the suggestion * * * that a failure of the association promptly to act * * * should be held a waiver of that right. To so hold would put the insured to the burden of determining when the right might be deemed waived. The consistent and just rule is to deduct the time occupied by the association under the reserved right from the limitation period."

■ Nor would the fact that the limitation provision in the policy is also prescribed by statute prevent application of the doctrine of estoppel with respect thereto. This court has frequently expressed the rule that such provisions are subject to the same principles which are applicable to contracts voluntarily made by the parties. Oppenheim v. Firemen's Fund Ins. Co. 119 Minn. 417, 138 N. W. 777; Kollitz v. Equitable Mutual Fire Ins. Co. 92 Minn. 234, 99 N. W. 892. See, 29 Am. Jur., Insurance, § 257; see, also, Meekins v. Aetna Ins. Co. 231 N. C. 452, 57 S. E. (2d) 777, 15 A. L. R. (2d) 949.

■ Based upon the authorities cited, it seems definite that here a fact question arose as to whether the conduct of defendant as above described justified plaintiffs in delaying their action and estopped defendant from relying on such delay as a defense. Likewise the authorities indicate that the question whether an insurer by its conduct is estopped to assert policy provisions in its defense to an action on the policy is for the jury to determine. Kassmir v. Prudential Ins. Co. 191 Minn. 340, 254 N. W. 446; James v. Merchants Life & Cas. Co. 118

Minn. 146, 136 N. W. 582; Meekins v. Aetna Ins. Co. *supra;* 29A Am. Jur., Insurance, § 1954. It would follow that here the trial court erred in directing a verdict in plaintiffs' favor, and accordingly a new trial must be granted wherein the jury may be afforded the opportunity of determining the issue described.

Should the jury find in plaintiffs' favor, plaintiffs would be entitled to recover the principal amount of the policy plus interest thereon from the due date thereof in accordance with policy provisions. Standard Provision 9 provides that indemnity is payable immediately upon receipt of due proof of loss. Standard Provision 7 requires that proof of loss be furnished to the insurer within 90 days after the date of loss. If it is determined that defendant, because of its conduct, is estopped from setting up time limitations with reference to proofs of loss and like provisions as a defense in this action, then it would seem only fair that interest should be allowed on the principal amount due from and after 90 days from the date of the death of the insured. The trial court so instructed the jury and we feel that such instruction was correct.

Reversed and new trial granted.

FRANK T. GALLAGHER, JUSTICE (concurring).

I concur with the majority under the facts and circumstances of this case. Here we have a situation where it is undisputed that the defendant acquired actual knowledge of the death of the insured within 48 hours after its occurrence. The evidence shows that on the day before the funeral, while the body of decedent was awaiting burial at the funeral parlors, the claim manager for defendant's accident and health department notified a brother of decedent that the company desired an autopsy and suggested that it be held before interment. He was referred by decedent's brother to an attorney who informed him after some discussion that an autopsy would not be permitted, whereupon the attorney was told that the claim would not be accepted without an autopsy. The evidence also indicates that the defendant's claim manager told the attorney that the company intended to exhume the body in order to have an autopsy.

The statement of insurer's claim manager that insurer would insist

on exercising its right to have an autopsy and would not make payment on the policy prior to its being performed certainly did not constitute a denial of liability. Rather, it was notice of insurer's position that the question of its liability would be held in abeyance until the autopsy disclosed whether insured's death was due to causes covered by the policy. At no time did it foreclose the likelihood that, if an autopsy revealed that such death was accidental, payment on the policy would then be made. At no time did it indicate that the consent of the beneficiaries was an essential prerequisite of such autopsy, or that it would withhold action therein until such consent had been obtained. Clearly, the beneficiaries were justified in awaiting word from the insurer with respect to all such matters.[1]

It is well established that an insurer may waive standard or statutory provisions limiting the time within which an action must be commenced. Where the company tells the insured or the beneficiaries that it will pay the claim, this tolls the period.[2] Where the company must, under the policy, decide whether or not to pay the claim before suit can be brought, this tolls the period.[3] We have also held that where it was the duty of the insurer's agent to make proof of death on behalf of the insured, his failure to do so prevented the statute of limitations from running.[4]

It is my opinion that where an insurance company does something which might lead the insured or beneficiary to believe that the matter is in the hands of the company for the time being, as when the com-

---

[1]The testimony establishing this factual situation is undisputed. Any inconsistency between it and the complaint would justify amendment of the latter under Rule 15.02 of Rules of Civil Procedure, but certainly would not alter or modify the inescapable conclusion resulting therefrom that insurer *at no time denied its liability under the policy.*

[2]Gilbert v. Globe & Rutgers Fire Ins. Co. 91 Ore. 59, 66, 174 P. 1161, 178 P. 358, 3 A. L. R. 205 (on petition for rehearing); Stanley v. Sterling Mutual Life Ins. Co. 12 Ga. App. 475, 77 S. E. 664; 46 C. J. S., Insurance, § 1264.

[3]Stewart v. National Council, 125 Minn. 512, 147 N. W. 651; Dechter v. National Council, 130 Minn. 329, 153 N. W. 742.

[4]Kelly v. Ancient Order of Hibernians, 113 Minn. 355, 129 N. W. 846.

pany indicates it is investigating the claim, conducting an appraisal, or having an autopsy performed, a jury question is presented as to whether the period of limitations for commencing suit should be tolled.

In Terpeluk v. Insurance Co. of North America, 189 Pa. Super. 259, 266, 150 A. (2d) 558, 561, the court stated:

. "* * * It is our view that, if the conduct of an insurer after a loss misleads its insured for a period of time, as the conduct of this appellant did according to the finding of the jury, then the limitation of the insured's right to bring suit is suspended during that period of time and begins to run on the date of denial of liability."

See, also, Millan v. St. Paul Fire & Marine Ins. Co. (Pa.) 39 Wash. Co. R. 200.

In Peeples v. Western Fire Ins. Co. 96 Ga. App. 39, 99 S. E. (2d) 349, 350, it was held:

"An agreement to have an appraisal made by arbiters will toll the period of limitation stated in the policy, and the period of limitation will not run while such agreement is pending."

This conclusion was repeated in another case arising out of the same controversy. Western Fire Ins. Co. v. Peeples, 98 Ga. App. 365, 106 S. E. (2d) 91.

The reason for this rule is stated more fully in Killips v. Putnam Fire Ins. Co. 28 Wis. 472, 482, 9 Am. R. 506, 512, as follows:

"It does not seem to require much argument to demonstrate that if, by any act or omission of the responsible officers and agents of the defendant, the plaintiff should be induced to suspend action in the premises, for a given time, such time should not be deemed a part of the twelve months to which his right of action is limited by the original contract. * * * Cases may readily be supposed, where, by delays in passing upon the sufficiency of proofs of loss, in investigating losses, or in replying to communications—by general objections to proofs, refusing to specify wherein they are defective, and thus compelling the claimant to grope his way in the dark, and find out as best he may wherein he has come short of fulfilling the requirements of his policy—and by many other means, the agents and officers

of an insurance company might, without committing any act which the law would adjudge fraudulent, so embarrass the claimant that he would be entirely unable to make satisfactory proofs of his loss within the time which his contract gives him for that purpose, and yet be entirely free from any laches whatever. The idea that the remedy on the policy may be lost under such circumstances, is not to be entertained for a moment. The plainest principles of justice demand that the time thus lost by the plaintiff without any fault on his part, but through the fault of the defendant, should be added to the time within which they contracted in the first instance that the action should be commenced, and the plaintiff be not barred of his remedy on the policy until such additional time has expired."

Even the dissent here, as well as the lower court, deplored the action of the insurance company in denying liability on a legal technicality. In the interests of justice, this abuse should not be allowed to go unrectified. Under the facts and circumstances here, I believe that the case should be remanded to allow a jury to pass on the question of whether the beneficiaries were misled to their detriment.

KNUTSON, CHIEF JUSTICE (dissenting).

I cannot agree with the majority opinion. In the first place, the opinion is based on decisions of this and other courts that do not support the conclusions arrived at. The cases cited fall largely into two categories, namely, those in which the policy itself required some affirmative act on the part of the insurer before the period limited for bringing an action would commence to run or those in which the insurer had done something to lull the insured into deferring the commencement of action, such as negotiating for a settlement or carrying on efforts at an adjustment. This case does not fall into either class.

The facts are not seriously in dispute. The majority arrive at the conclusion that there was no denial of liability and therefore that the period limiting the time within which to commence an action was tolled or that the insurer waived the right to assert as a defense the provisions of the policy limiting the time within which to commence an action or is estopped in some manner to assert it. How either a waiver or estoppel can be established in this case is beyond my comprehension.

The evidence is clear as to what happened. The insurer obtained information concerning the death of the insured within 2 days after its occurrence. Upon hearing a report that death was due to a cerebral hemorrhage, which would exclude liability, the claim manager of the insurer's accident and health department called Father O'Donnell, one of the beneficiaries under the policy, and requested an autopsy. He was referred to the attorney who was handling the estate of the insured and was told by him that an autopsy would not be granted. The claim manager then informed the attorney that the claim would not be recognized without an autopsy. Father O'Donnell's testimony with respect to the granting of an autopsy is quite revealing. He testified:

"A.   He [the claim manager] asked for permission to perform an autopsy, and I explained that the wake was in progress, and that I did not think it was correct to follow such procedure during that time. In addition to the fact that my brother was opposed to an autopsy. I heard him speak on previous occasions that when the question came up he always said no, he would not want that, so I said no. *I refused consent on those grounds,* and I told this man to call the attorney who was handling the estate of my brother." (Italics supplied.)

Can anyone deny, in view of that testimony from one of the beneficiaries in the policy, that there was a refusal to consent to an autopsy? Coupled with such refusal is a clear statement by the claim manager that they would not accept the claim without an autopsy. It is hard to imagine how there could be a more complete denial of liability.

Furthermore, the complaint in this action alleges, among other things:

"Within forty-eight (48) hours of the death of said James J. O'Donnell, defendant received notice of the accidental injuries and resulting death of said James J. O'Donnell and defendant thereupon was obligated to pay to plaintiffs the said sum of Five Thousand ($5,000.00) Dollars, but *the defendant then and there denied liability therefor,* and no part thereof has been paid." (Italics supplied.)

In an affidavit signed by Joseph M. Donahue, attorney for the estate of the insured, we find the following:

"Affiant states that said E. A. Benedum [defendant's claim manager] still insisted upon an autopsy being performed and when again advised by affiant that such would be impossible that said E. A. Benedum stated that he would seek a Court Order exhuming the body of said James J. O'Donnell after the funeral and that in his opinion death was not caused by accidental means but due to a cerebral hemorrhage, and that *said company would not pay any benefits under the policy,* before referred to, *if such autopsy was not performed.*" (Italics supplied.)

An action for death by wrongful act was commenced to recover for the death of the insured, and Mr. Donahue testified, among other things:

"Q. It is true one of the main reasons why the suit on this policy was not commenced sooner was you wanted to settle the wrongful-death action first?

"A. Well, to the extent that this policy was an accidental death policy with the company claiming he died from a cerebral hemorrhage, and we didn't want anything to interfere with the action for the wrongful death.

"Q. And to answer my question that would be one of the reasons that you delayed bringing the suit in this action?

"A. That was one, and the other one was that was the last item to clean up as far as the estate was concerned—I mean the death."

With respect to the present action, Mr. Donahue testified:

"* * * it further appears that when this complaint was served on the Continental Casualty Company on the 31st of March of 1959 it seemed perfectly obvious to me and to anyone that they had denied liability because they had not paid the money that was due under the policy."

Nowhere is there any indication of an intention on the part of the insurer to pay. A waiver is a voluntary relinquishment of a known right.[1] There is not one iota of evidence that would justify a conclusion

---

[1] Engstrom v. Farmers & Bankers Life Ins. Co. 230 Minn. 308, 41 N. W. (2d) 422.

that the insurer had waived its defense that the action was brought too late, nor is there any evidence to show that the beneficiaries under the policy were lulled into any kind of security by the insurer or had any reason to believe that the policy would be paid.

The insurance policy was delivered to the attorney for the estate of the decedent a few months after his death. It remained there, with nothing having been done, until the time for bringing the action had expired.

The provisions of this policy respecting the limitation of the time within which an action may be brought are made part of the contract by virtue of Minn. St. 1953, § 62.03, which reads:

"Every policy so issued shall contain certain standard provisions, which shall be in the words and in the order hereinafter set forth and be preceded in every policy by the caption 'Standard Provision.' * * * The standard provisions shall be: * * *."

Thereafter standard provisions are prescribed in the statute that are identical in substance with the provisions of the policy quoted in the majority opinion.

Plaintiffs contend, and the trial court held, that an obligation rested on the insurer to furnish forms for submitting proof of loss and that, until it did so, the time limited for commencing an action was tolled. Neither the contract, nor the statute from which the contract provisions are taken, can be so construed. It is to be observed that under Standard Provision 4 of the contract (§ 62.03[4][C]) the first requirement in case of accidental death is that immediate notice must be given the insurer. It might be held that such notice need not be given where the insurer has actual notice of such death. But Standard Provision 6 (§ 62.03[6]) provides:

"The Company upon receipt of such notice, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. * * *"

Thus as a prerequisite to the insurer's obligation to furnish forms is the requirement that notice of the death be given to the insurer. Aside from that, however, Standard Provision 6 provides an alternative in that, if the insurer fails to furnish such forms within 15 days after

receipt of such notice, the claimant is deemed to have complied with the requirements of the policy with respect to furnishing proofs of loss "upon submitting within the time fixed in the policy for filing proofs of loss, written proof covering the occurrence, character and extent of the loss for which claim is made." It is thus apparent that some obligation rests upon the beneficiaries of a policy to take some action either by procuring forms from the insurer for submitting proofs of loss or by following the alternative provided by the statute.

We have held that denial of liability waives the necessity of furnishing proof of loss. Allen v. St. Paul Fire & Marine Ins. Co. 167 Minn. 146, 208 N. W. 816. But denial of liability does not operate to waive a provision of the contract or statute limiting the time in which to commence an action on the policy,[2] in the absence of some act on the part of the insurer that would establish an estoppel.[3]

Some of the same questions involved here were considered in Paleias v. Equitable Life Assur. Society, 181 Misc. 1003, 42 N. Y. S. (2d) 698, affirmed, 267 App. Div. 862, 47 N. Y. S. (2d) 116, appeal denied, 267 App. Div. 901, 48 N. Y. S. (2d) 325. The provision of the policy involved in that case limiting the time within which to bring an action is identical with that involved here. In holding that the claim involved there was barred, the New York court said (181 Misc. 1007, 42 N. Y. S. [2d] 701):

"Plaintiff urges that defendant waived the filing of any further proofs of loss by its letter disclaiming liability * * *. I am inclined to agree with this contention, and defendant does not seriously dispute it. However, while defendant's denial of liability under the policy * * * operated to relieve plaintiff of the necessity for filing proofs of loss, it did not have the effect of waiving the explicit provision of the policy concerning the period of limitation within which to bring an action. Plaintiff argues that waiver of proofs of loss made the two-year statute inapplicable, since it could not be set running without filing proofs of loss. * * * In the case at bar, however, the limitation was not set

---

[2]Annotation, 171 A. L. R. 578.

[3]For examples of action on the part of the insurer that would establish an estoppel, see 46 C. J. S., Insurance, § 1264c.

running by the furnishing of proofs, but began from a fixed date, that is from the *expiration of time* within which proofs of loss must be furnished under the terms of the policy. This court holds, therefore, that the \* \* \* cause of action is barred by the two-year limitation provided in the policy."

The language of Standard Provision 14 (§ 62.03[14]) clearly provides that the 2-year limitation period commenced to run "from the expiration of the time within which proof of loss is required by the policy." This fixed a definite time for commencement of the running of the period of limitation. Nowhere is there any indication that the period of limitation shall be tolled if proofs of loss are not furnished or the alternative provided by Standard Provision 6 is not complied with. Proofs of loss are intended for the benefit of the insurer. So are provisions limiting the time for commencing an action. It may waive the right to receive proofs of loss expressly or by its conduct without thereby also waiving the right to insist on the separate provision requiring the action to be brought within a 2-year period of limitation.

Plaintiffs and the majority rely on Kelly v. Ancient Order of Hibernians, 113 Minn. 355, 129 N. W. 846; Dechter v. National Council, 130 Minn. 329, 153 N. W. 742; and Stewart v. National Council, 125 Minn. 512, 147 N. W. 651. These cases are not in point. In all of them it was necessary for the insurer or someone else to perform some act that would establish the time when the period of limitation would commence to run. Here, that time is definitely fixed by the contract and the statute as the expiration of the 90-day period within which proofs of loss are required to be furnished.[4]

Plaintiffs seek to invoke the rule that the language of the policy, having been selected by the insurer, should be resolved in favor of the insured where there is ambiguity. The rule has no application here for two reasons. In the first place, there is no ambiguity. The language of both contract and statute is clear. In the second place, the language

---

[4]For cases where it was held that a claim was barred, see Kulberg v. Supreme Council F. A. U. 135 Minn. 150, 160 N. W. 685, and McKitrick v. Travelers Equitable Ins. Co. 174 Minn. 354, 219 N. W. 286.

is not that of the insurer but that of the legislature. The contract provisions are taken verbatim from the legislative act.

Minn. St. 1953, § 62.03, paragraph 14, was repealed by the 1957 legislature. L. 1957, c. 489. The standard provision enacted in its stead, c. 489, § 4, subd. 2(11), is now codified as Minn. St. 62.0025, subd. 2(11), and extends the time for bringing the action from 2 years after the time written proof of loss is required to be furnished to 3 years. While the trial court did not base its decision on the fact that the time for bringing the action had been extended before the action was commenced, and the majority do not discuss it, plaintiffs nevertheless assert the claim that the 3-year limitation applied as an additional reason why we should affirm. The provision was enacted after the death of the insured but before the 2-year limitation period had expired, so that if the 3-year period were applicable the action would have been brought within that period of time.

In Donaldson v. Chase Securities Corp. 216 Minn. 269, 13 N. W. (2d) 1, affirmed, 325 U. S. 304, 65 S. Ct. 1137, 89 L. ed. 1628, Mr. Chief Justice Henry M. Gallagher pointed out that there are really three types of statutes of limitation. The first is one where the passage of time creates a vested right, such as that relating to adverse possession; the second is one where a time limitation is imposed on the action arising out of a right where no vested interest in immunity from suit is given; and the third is one where a cause of action is established by the statute and the limitation is a part of the cause of action. The instant case is clearly of the second type where the right exists independent of the right of limitation. It is basically a right based on contract, but a remedy to enforce the right is denied by statute after the expiration of the limiting period. In cases such as we have here it may be admitted that the time for bringing an action on the contract may be extended by the legislature before the right has expired. However, a legislative act changing such statute of limitation is not to be construed to have retroactive effect unless it is clearly so intended by the legislature.[5] Section 645.21 provides:

---

[5] See, Annotation, 112 A. L. R. 1296.

"No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature."

This statutory provision was construed in Chapman v. Davis, 233 Minn. 62, 65, 45 N. W. (2d) 822, 824, where we said:

"* * * This section is but expressive of the principle that the courts will presume that a statutory enactment applies to the future and not to the past. * * * Furthermore, § 645.21 applies to all laws without making any distinction between laws relating to procedure and those pertaining to substantive rights."

The Chapman case was followed in Ekstrom v. Harmon, 256 Minn. 166, 168, 98 N. W. (2d) 241, 242, in which we said:

"* * * This case [Chapman v. Davis, *supra*] has since been followed at least twice. We reaffirm the soundness and desirability of that rule now. We overrule any decisions to the contrary, * * *."

Thus, it follows that if a statute of limitations is to be given retroactive effect the legislative intention to have it so applied must clearly appear from its enactment. There is no language in the 1957 act that would indicate any legislative intent to have it applied retrospectively. To the contrary, the legislative intent appears to be the opposite. Section 62.0015, subd. 1, reads in part:

"On and after effective date of Laws 1957, Chapter 489 [April 12, 1957], no policy of accident and sickness insurance shall be issued or delivered to any person in this state * * * until * * *."

From this language it is clear that the act was to apply only to policies issued after April 12, 1957. Section 62.0025, subd. 2, provides in part:

"Except as provided in subdivision 4 each such policy delivered or issued for delivery to any person in this state shall contain the provisions specified * * *."

Here, again, it appears that reference is had to policies issued after April 12, 1957, and that the standard provisions enumerated in § 62.0025 shall apply to only such policies.

Further evidence of the legislature's intent appears in § 62.0055, which reads:

"A policy-rider or endorsement, which could have been lawfully used or delivered or issued for delivery to any person in this state immediately before the effective date of Laws 1957, Chapter 489, may be used or delivered or issued for delivery to any such person until January 1, 1959, without being subject to the provisions of sections 62.002, 62.0025 or 62.003."

Here the legislature permitted the use of certain riders or endorsements for a period of almost 2 years after the effective date of c. 489.

Under these circumstances, it must be apparent that the legislature did not intend to extend the period within which an action could be brought retroactively as to policies issued before the effective date of the act. It follows that the 2-year period of limitation governs the rights of the parties to this action.

The trial court obviously based its decision, at least in part, on its dislike for provisions in insurance policies limiting the time in which to bring an action and the action of the insurer in resting on that defense. While I might agree that it is deplorable that an insurance company, having accepted premiums over a number of years for an assumed risk, will evade payment of a legal claim based on such a risk on a legal technicality, we, as courts, have no right to set aside a defense that exists if the insurer wishes to assert it. We must take the contract and the statute as we find them and enforce the legal rights of the parties according to the language of the contract, if its meaning is clear. It is difficult to understand why action was not brought within the time limited by this contract. To me it is clear that the evidence sustains only one conclusion and that is that the provisions of the contract required commencement of the action within 2 years after the expiration of the 90-day period within which proof-of-loss blanks were required to be furnished. That being so, I fail to see how we have any right to change the provisions of the contract, no matter how much we might dislike the denial of liability.

NELSON, JUSTICE (dissenting).

I concur in the dissent of Mr. Chief Justice Knutson.

Mr. Justice Rogosheske, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.

Mr. Justice Otis, having presided at the pretrial conference, took no part in the consideration or decision of this case.