Gladys and Jacob
TACKLESON, Appellants,

v.

ABBOTT–NORTHWESTERN
HOSPITAL, INC., et al.,
Respondents.

No. C8–87–1095.

Court of Appeals of Minnesota.

Dec. 1, 1987.
Review Denied Feb. 12, 1988.

John C. Goetz, Peter H. Berge, Schwebel, Goetz & Sieben, P.A., Minneapolis, for appellants.

Charles E. Lundberg, Rebecca L. Moos, Bassford, Heckt, Lockhart & Mullin, P.A., Minneapolis, for respondents.

Heard, considered and decided by FOLEY, P.J., and WOZNIAK and CRIPPEN, JJ.

## OPINION

FOLEY, Judge.

The trial court granted summary judgment in favor of respondent Abbott–Northwestern Hospital, Inc., finding appellants Gladys and Jacob Tackleson's action was barred by the two-year statute of limitations set forth in Minn.Stat. § 541.07(1) (1980). On appeal, the Tacklesons argue the statute was tolled on the ground of fraudulent concealment or, alternatively, Abbott-Northwestern is equitably estopped from asserting the statute of limitations as a defense. We affirm.

## FACTS

On September 17, 1980, Gladys was admitted to Abbott–Northwestern for surgery. On September 19, she tried to leave her hospital bed on three occasions, falling each time. On the third fall, she severely injured her ankle.

Approximately one month after the fall, Jacob spoke with a physician who told Tackleson the fall was the hospital's fault and the hospital's insurance would cover her hospital bill. The physician Tackleson spoke with was a family friend and was not a hospital employee or officer.

In January 1982, Abbott–Northwestern contacted Gladys and offered to forgive her hospital bill if she would sign a release relieving it from liability. Gladys refused to sign the release.

Another family friend told the Tacklesons he contacted an attorney who would handle their claim against the hospital. The Tacklesons never personally contacted the attorney. The attorney never pursued the Tacklesons' claim.

Abbott–Northwestern billed the Tacklesons, but they did not make any payments and had no further communication with Abbott–Northwestern regarding the outstanding bill. Abbott–Northwestern made an internal decision not to hire a collection agency or otherwise aggressively seek payment of the bill.

On January 19, 1983, the Tacklesons contacted an attorney and commenced this action naming Abbott–Northwestern and several of its nurses as defendants. All defendants moved for summary judgment, claiming the action was barred by the statute of limitations. Finding the Tacklesons' claim against the nurses was governed by the six-year limitation set forth in Minn. Stat. § 541.05, subd. 1(5) (1980), the trial court denied the nurses' motion. Finding the two-year statute of limitations set forth in Minn.Stat. § 541.07(1) applied to the Tacklesons' claim against Abbott–Northwestern, the trial court ordered summary judgment in Abbott–Northwestern's favor.

## ISSUE

Did the trial court err in determining the Tacklesons' claim against Abbott–Northwestern was barred by the two-year statute of limitations set forth in Minn.Stat. § 541.07(1)?

## ANALYSIS

Summary judgment may be granted if "there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn.R.Civ.

P. 56.03. Upon review of a grant of summary judgment, we must determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). The evidence must be viewed in the light most favorable to the one against whom summary judgment was granted. *Abdallah, Inc. v. Martin*, 242 Minn. 416, 424, 65 N.W.2d 641, 646 (1954).

The Tacklesons do not dispute the fact that they did not commence their action against Abbott–Northwestern until January 1983, four months after the two-year limitation period had run. The Tacklesons argue, however, fraudulent concealment by Abbott–Northwestern tolls the statute of limitations or, alternatively, the hospital is equitably estopped from asserting the statute of limitations as a defense.

*Fraudulent Concealment*

■ In limited circumstances, fraud in concealing a patient's cause of action may toll the running of the statute of limitations. In *Schmucking v. Mayo*, 183 Minn. 37, 235 N.W. 633 (1931), the Minnesota Supreme Court held if a doctor prevents a patient from discovering a cause of action by fraudulent concealment, the statute of limitations will be tolled until the patient discovers, or with reasonable diligence should have discovered, the cause of action. The *Schmucking* court stated:

> The rule, which is supported by the numerical weight of authority, is that when a party against whom a cause of action exists in favor of another, by fraudulent concealment prevents such other from obtaining knowledge thereof, the statute of limitations will commence to run only from the time the cause of action is discovered or might have been discovered by the exercise of diligence. This is the rule apart from any statute.

*Id.* at 38–39, 235 N.W. at 633. The party claiming fraudulent concealment has the burden of showing the concealment could not have been discovered sooner by reasonable diligence and that the concealment was not the result of his/her own negligence. *Collins v. Johnson*, 374 N.W.2d 536, 541 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Nov. 26, 1985).

■ We find the evidence in this case insufficient to establish a claim of fraudulent concealment. In fact, Abbott–Northwestern informed Gladys of her potential action when it offered to waive her hospital bill if she released it from liability. Moreover, Abbott–Northwestern did nothing to deter the Tacklesons from obtaining legal counsel or otherwise pursuing their claim.

*Equitable Estoppel*

■ Estoppel is an equitable doctrine within the court's discretion and is intended to prevent a party from taking unconscionable advantage of its own wrong by asserting its strict legal rights. *Northern Petrochemical Co. v. United States Fire Insurance Co.*, 277 N.W.2d 408, 410 (Minn.1979). To invoke this doctrine, the Tacklesons must show Abbott–Northwestern made representations or inducements upon which they reasonably relied which will cause them harm if estoppel is not applied. *Id.* Estoppel depends upon the facts of each case and ordinarily presents a question of fact for the jury. *Brenner v. Nordby*, 306 N.W.2d 126, 127 (Minn.1981); *O'Donnell v. Continental Casualty Co.*, 263 Minn. 326, 333, 116 N.W.2d 680, 684 (1962).

It is the Tacklesons' position that Abbott–Northwestern's offer to forgive the hospital bill in exchange for a release of liability, as well as its decision not to collect the bill, prevented them from bringing this action until after the statute of limitations had run. As a result, they claim they are entitled to invoke the doctrine of estoppel.

In *Brenner*, the supreme court held an offer to settle a potential claim, when combined with other factors, could entitle a party to invoke the doctrine of equitable estoppel. *Id.* at 127. However, there must must be some evidence the party relied on the offer as a waiver of its right to assert the statute of limitations. *See id.*

■ Here, the only time the Tacklesons and Abbott–Northwestern discussed this action was in the spring of 1982 when Abbott–Northwestern offered to forgive

the hospital bill if Gladys would sign the release. The Tacklesons submitted no evidence of their reliance upon Abbott–Northwestern's offer. Unfortunately, the Tacklesons' only reliance was in their friend who told them he hired an attorney to pursue their claim. As a result, the trial court correctly held the settlement offer did not estop Abbott–Northwestern from asserting the statute of limitations as a defense.

■ We also find Abbott–Northwestern's decision not to collect on the hospital bill does not create estoppel. The Tacklesons were never informed by Abbott–Northwestern of its decision not to collect on the hospital bill. All communications concerning collection of the hospital bill took place entirely within the hospital. Moreover, Abbott–Northwestern never even spoke with the Tacklesons after Gladys refused to sign the release. Thus, we find Abbott–Northwestern's decision not to collect on the hospital bill does not amount to a representation or inducement under *Northern Petrochemical.* Since the hospital made no representation or inducement, it is not estopped from asserting the statute of limitations as a defense.

### DECISION

The trial court correctly ruled the Tacklesons' negligence claim was barred by the two-year statute of limitations set forth in Minn.Stat. § 541.07(1).

Affirmed.

CRIPPEN, Judge, dissenting.

Appellants did not meet their burden of proving fraudulent concealment. They did, however, raise factual issues with respect to the elements of equitable estoppel.

Whether it was reasonable for appellants to rely on respondent's offer to forgive hospital bills in exchange for a release of liability or whether respondent's decision to suspend collection action on their bill prevented appellants from bringing the action are questions of fact. The original trial judge stated in the first summary judgment motion in this case:

Analyzing the record in view of the above-stated standard requires the Court to deny Defendant's motion for Summary Judgment. There exist sufficient facts to support a finding of * * * equitable estoppel.

\* \* \* \* \* \*

After her fall Gladys and her husband Jake considered bringing a claim against the hospital. Gladys indicated to Grace Boe, a Director of Patient Representatives, that she would be talking to a friend who was an attorney about the matter. Additionally, Jake Tackleson talked with Dr. David Hickok, a staff physician at Abbott–Northwestern, who assured Jake that Gladys' fall was the hospital's fault and that the hospital had insurance that would pay the bills. Furthermore, it appears that Marlowe Senske, an assistant administrator at Abbott–Northwestern at the time, talked with Dr. Hickok about the matter. Abbott–Northwestern responded by offering to forgive Gladys' bills if she would sign a general release. Gladys refused to sign a release. Abbott–Northwestern did not seek to aggressively bill or collect the accounts, but continued to negotiate a release. By failing to treat the bills as a normal collection account, a trier of fact could reasonably find that Abbott–Northwestern was not pursuing the matter. This coincides with Dr. Hickok's representations to Jake Tackleson. A trier of fact could further find that Abbott–Northwestern's actions induced Gladys Tackleson to refrain from suing out the matter.

Although an affidavit filed for purposes of the second summary judgment motion established that Dr. Hickok was never actually employed by the hospital, the hospital's actions and appellant's reliance still justify denial of the summary judgment motion.

The hospital's treatment of the case raises significant questions of fact. The notes of Grace Boe, Director of Patient Representation and Director of Risk Management, indicate that she was aware of Dr. Hickok's involvement in the case. In addi-

tion, the hospital's collection records indicate an aggressive approach to have appellants sign a general release. When appellants refused to sign the release, Boe's notes reflect a continuous monitoring of the billing situation and contain several notes not to send the Tackleson's bill to a collection agency. Finally, Marlene Senske, an administrator for the hospital, admitted in an affidavit that it "could have" been a purpose of the hospital's decision not to send Mrs. Tackleson's bill to a collection agency to induce appellants not to pursue legal action.

Whether appellants relied on the hospital's actions is also a question of fact. Gladys Tackleson's affidavit stated that she would have sought legal assistance much earlier had she known the hospital would not honor her understanding that the hospital would cover all past and future medical bills relating to medical treatment for her leg.

Although the evidence presented by the parties on this issue of equitable estoppel may favor defendant, the purpose of a motion for summary judgment is not to resolve factual issues but to determine if they exist. Because there is some question as to the representations of the hospital and the reasonableness of the reliance of appellants, the question of equitable estoppel should be presented to a factfinder.

I respectfully dissent.